*In re* WANGLER

Docket No. 318186. Submitted April 8, 2014, at Detroit. Decided May 27,
    2014, at 9:20 a.m. Leave to appeal sought.

The Department of Human Services petitioned in the Sanilac Circuit
    Court, Family Division, asking the court to take jurisdiction over
    respondent's three minor children. The court, John R. Monaghan,
    J., ordered the parties to participate in mediation. Following
    mediation, the parties entered into an agreement that provided
    that respondent would enter a plea of admission to certain
    allegations in the petition in order to confer jurisdiction over the
    children, but the actual adjudication would be held in abeyance for
    a period of six months during which time respondent would
    participate in services and supervised visitation. Several review
    hearings were held over the course of the following 11 months.
    Petitioner ultimately asserted that reunification was not possible
    given respondent's lack of progress and her failure to comply with
    the ordered services. At petitioner's urging, following a January
    2013 review hearing, the court entered an order on February 4,
    2013, indicating that it was taking formal jurisdiction over the
    children in accordance with the mediation agreement. Peti-
    tioner then filed a supplemental petition seeking termination of
    respondent's parental rights. Following a termination hearing
    on June 26, 2013, the court entered an order terminating respon-
    dent's parental rights to all three children. Respondent appealed,
    challenging the trial court's exercise of jurisdiction over the children.

The Court of Appeals *held*:

During the adjudicative stage of termination proceedings, the
family division of a circuit court determines whether it has
jurisdiction over the minor child by determining whether, under
MCL 712A.2(b)(2), the respondent's conduct has created a situa-
tion in which the child's home or environment—by reason of
neglect, cruelty, drunkenness, criminality, or depravity—is an
unfit place for the juvenile to live in. The dispositional phase of the
proceedings concerns the consequences arising from the fact of
adjudication. Ordinarily, an adjudication cannot be collaterally
attacked following an order terminating parental rights. There-
fore, a respondent may not challenge the trial court's initial

exercise of jurisdiction if the court has subsequently ordered termination in a dispositional order following the filing of a supplemental petition for termination. However, if termination occurs at the initial dispositional hearing as a result of a request for termination contained in the original or an amended petition for jurisdiction, then an attack on adjudication is direct, and not collateral, as long as the appeal is from the initial order of disposition and that order contains both a finding that an adjudication was held and a finding that the children came within the jurisdiction of the court. In this case, the mediation agreement authorized the start of dispositional proceedings before formal adjudication, which did not occur until the court entered its formal order of adjudication on February 4, 2013. The same order was also a dispositional order because it placed the children under petitioner's supervision, which made the order appealable as of right under MCR 3.993(A)(1). Because that order was appealable as of right, respondent was required to raise her jurisdictional challenges in an appeal of that order. Respondent, however, waited until after the later order terminating her parental rights entered before challenging the court's exercise of jurisdiction. Therefore, her challenges to the trial court's exercise of jurisdiction constituted an impermissible collateral attack.

Affirmed.

GLEICHER, J., dissenting, would have held that the trial court never obtained jurisdiction and would have vacated the order terminating respondent's parental rights and remanded the case for a new hearing. The June 26, 2013 hearing constituted the initial dispositional hearing following adjudication. Accordingly, respondent's appeal of the adjudication was not collateral, and respondent was entitled to challenge the adjudication as well as the termination on appeal. In order to safeguard parents' due process rights, before a court may exercise jurisdiction on the basis of a parent's plea, under MCR 3.971(C)(1) the court must satisfy itself that the parent knowingly, understandingly, and voluntarily waived certain rights. In this case, no dialogue took place between the court and the parent, and the mediation procedure employed as a substitute for an adjudicative trial improperly bypassed the due process protections enshrined in the court rules. Further, under MCR 3.977(E)(3), termination may only occur at the initial dispositional hearing if the court's findings are based on legally admissible evidence. Termination in this case took place at the initial dispositional hearing. Assuming that a valid adjudication took place, the circuit court also erred by relying on hearsay evidence in terminating respondent's parental rights.

PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — ADJUDICATION —
COLLATERAL ATTACKS.

During the adjudicative stage of termination proceedings, the family
division of a circuit court determines whether it has jurisdiction
over the minor child by determining whether, under MCL
712A.2(b)(2), the respondent's conduct has created a situation in
which the child's home or environment—by reason of neglect,
cruelty, drunkenness, criminality, or depravity—is an unfit place
for the juvenile to live in; the dispositional phase of the proceed-
ings concerns the consequences arising from the fact of adjudica-
tion; an adjudication cannot be collaterally attacked following an
order terminating parental rights unless the termination occurred
at the initial dispositional hearing such that the appellant's
challenge to the trial court's exercise of jurisdiction is a direct
appeal; a court order that constitutes both a formal order of
adjudication and a dispositional order placing the child under the
supervision of the Department of Human Services is appealable as
of right under MCR 3.993(A)(1), and any jurisdictional challenges
must be raised in an appeal of that order; a party who fails to raise
a jurisdictional challenge in an appeal of that order may not do so
later in an appeal of a subsequent termination order.

*James V. Young*, Prosecuting Attorney, and *Eric G. Scott*, Assistant Prosecuting Attorney, for petitioner.

*Brandon R. McNamee* for respondent.

Before: HOEKSTRA, P.J., and SAWYER and GLEICHER, JJ.

HOEKSTRA, P.J. Respondent appeals as of right the trial court's order terminating her parental rights to three minor children pursuant to MCL 712A.19b(3)(a)(*ii*) (child's parent deserted the child), (c)(*i*) (conditions that led to adjudication continue to exist), and (g) (failure to provide proper care or custody). On appeal, respondent challenges only the validity of the trial court's exercise of jurisdiction over the minor children. Because respondent's challenge is an impermissible collateral attack on the trial court's exercise of jurisdiction, we affirm.

On January 11, 2012, petitioner, the Department of Human Services (DHS), requested that the trial court take jurisdiction over the minor children after investigating respondent in response to a complaint that she was using heroin and was involved in a domestic violence incident with her boyfriend. Petitioner alleged that respondent continued to test positive for heroin and could not provide a safe environment for the minor children. On January 13, 2012, the trial court entered an order following a preliminary hearing placing the children under petitioner's supervision. It also ordered the parties to participate in mediation. On February 10, 2012, respondent consented to the placement of one of the minor children with that child's father. Mediation occurred on February 28, 2012. Following mediation, the parties entered into an agreement that provided that respondent would plead to certain allegations in the petition in order to confer jurisdiction over the minor children; however, the actual adjudication would be held in abeyance for a period of six months during which time she would participate in services and supervised visitation. The agreement further set forth the consequences of a plea of admission. The agreement was signed by respondent. On February 28, 2012, the trial court accepted the mediation agreement and adopted it as an order of the court.

Thereafter, petitioner provided services to respondent consistent with the service plan that was set forth by the mediation agreement, including drug treatment services and supervised visitation with the children. Dispositional review hearings were held on May 3, 2012, August 2, 2012, and November 1, 2012. Respondent did not appear at any of the hearings, but her attorney was present at all three. Following each hearing, the trial court continued its prior orders without formally accepting respondent's plea and taking juris-

diction over the minor children. Following the dispositional review hearing on May 3, 2012, another one of the minor children was placed with that child's father. The remaining minor child was placed with his grandparents following the August 2, 2012 dispositional review hearing.

The next dispositional review hearing was held on January 31, 2013, and respondent was again not present. At this hearing, a DHS employee stated that reunification was no longer a viable option in light of respondent's lack of progress, and noted that the court still had not formally entered an order of adjudication taking jurisdiction over the children. Petitioner noted that the parties entered into a mediation agreement, and that respondent had not continued to comply with the ordered services; therefore, pursuant to the agreement, the trial court could accept respondent's plea and take jurisdiction over the minor children. Respondent's attorney agreed that the mediation agreement empowered the trial court to take jurisdiction over the children. The trial court then stated on the record that it was taking "formal jurisdiction" and authorized petitioner to file a supplemental petition asking for termination of respondent's parental rights.

Consistent with the trial court's statements on the record, an "order following dispositional review" was entered on February 4, 2013. The order noted that the children had been removed from respondent's care, that reasonable efforts to finalize the court-approved permanency plan of reunification were made, and that the children would continue to remain under petitioner's care and supervision. An additional document was attached to the order wherein the trial court formally entered an adjudication order. The order stated that "based upon the stipulated mediation resolution, the

court takes formal jurisdiction of the minor children . . . ." The order further noted that it was "contrary to the best interest of the children to be in the mother's home based on the content of the petition." Finally, the order gave petitioner discretion to file a supplemental petition requesting termination of respondent's parental rights.

On March 13, 2013, petitioner filed a supplemental petition seeking termination of respondent's parental rights. A termination hearing was held on June 26, 2013, and on July 16, 2013, an order terminating respondent's parental rights and the trial court's written opinion were entered. Thereafter, this appeal ensued.

On appeal, respondent argues that the written plea that was incorporated into the mediation agreement was invalid, and therefore, it could not form a basis for the trial court to take jurisdiction over the minor children. Further, respondent argues that the trial court's exercise of jurisdiction over the minor children was invalid because she was not present at the hearing following which the trial court formally exercised its jurisdiction over the minor children. Respondent acknowledges in her brief on appeal that jurisdiction cannot be collaterally attacked; however, she argues that because the termination hearing immediately followed the court's order of adjudication, her jurisdictional challenge should not be considered a collateral attack.

MCL 712A.2(b)(2) provides a court with jurisdiction in proceedings regarding a minor child found within the county "[w]hose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent . . . is an unfit place for the juvenile to live in." The determination whether a court

has jurisdiction over a minor child begins with the court's preliminary proceeding following the filing of a petition. *In re Hatcher*, 443 Mich 426, 433; 505 NW2d 834 (1993). The petition sets forth the charges against the parent, and at the preliminary hearing the court must determine whether there is probable cause to substantiate the facts alleged in the petition and whether the facts alleged in the petition, if proved, would fall under MCL 712A.2(b)(2). *In re Hatcher*, 443 Mich at 434-345. If the court authorizes the petition for jurisdiction during the preliminary hearing, it will generally issue a preliminary order specifying a plan for temporary placement. *Id*. at 435.

Generally, the adjudicative phase will follow the preliminary hearing. *Id*. During the adjudicative phase, the court determines "whether the child is neglected within the meaning of [MCL 712A.2(b)(2)] and then orders the disposition or placement that comports with the child's best interests." *Id*. at 435-436. As explained by this Court in *In re SLH*, 277 Mich App 662, 669 n 13; 747 NW2d 547 (2008):

> Some, but not all, courts issue an Order of Adjudication following the plea or a trial at which jurisdiction was found. Other courts, however, do not issue an Order of Adjudication but only an order of disposition that includes the statement that "[a]n adjudication was held and the child(ren) was/were found to come within the jurisdiction of the court." MCR 3.993(B) provides that an Order of Adjudication may only be appealed by leave granted, whereas an initial order of disposition is the first order appealable as of right. Accordingly, because an initial order of disposition is the first order appealable as of right, an appeal of the adjudication following the issuance of an initial dispositional order is not a collateral attack on the initial adjudication, but a direct appeal, notwithstanding that a termination of parental rights may have occurred at the initial dispositional hearing.

MCR 3.993(A)(1) provides that an order of disposition placing a minor under the supervision of the court or removing the minor from the home" is appealable by right; MCR 3.993(B) provides that all orders not listed in subrule (A) are appealable by leave.

Therefore, during the adjudicative stage, the court merely determines whether it has jurisdiction over the minor child by determining whether the respondent's conduct created a situation in which the child's "home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity . . . is an unfit place for the juvenile to live in," under MCL 712A.2(b)(2). An adjudication finding that the court may take jurisdiction over a minor child does not involve an order authorizing any specific consequences for the respondent. The dispositional phase of the proceedings concerns the consequences arising from the fact of the adjudication. During the dispositional phase of the proceedings, the court can order placement of a minor child, visitation, services, or any other specific action involving the respondent and the minor child that is under the court's jurisdiction.

"Ordinarily, an adjudication cannot be collaterally attacked following an order terminating parental rights." *In re SLH*, 277 Mich App at 668. See also *In re Gazella*, 264 Mich App 668, 679-680; 692 NW2d 708 (2005). Said differently, a respondent may not challenge the trial court's adjudication, meaning its exercise of jurisdiction, "when a termination occurs following the filing of a supplemental petition for termination after the issuance of the dispositional order." *In re SLH*, 277 Mich App at 668. However,

> [i]f termination occurs at the initial disposition as a result of a request for termination contained in the original, or amended, petition for jurisdiction, then an attack on the

adjudication is direct and not collateral, as long as the appeal is from an initial order of disposition containing both a finding that an adjudication was held and a finding that the children came within the jurisdiction of the court. [*Id.* at 668-669.]

Accordingly, the issue we must resolve is whether termination occurred at the initial disposition such that respondent's attack on the trial court's exercise of jurisdiction is a direct appeal or whether there was an order of disposition that respondent was required to appeal as of right in order to challenge the trial court's exercise of jurisdiction.

In this case, contrary to the typical order of proceedings, the trial court ordered the parties to engage in mediation immediately after the preliminary hearing wherein it found probable cause to authorize the petition and ordered temporary placement of the minor children. During mediation, the parties negotiated an agreement that was signed by all participants, including respondent. The agreement first sets forth the consequences of the court's acceptance of respondent's plea of admission. The agreement then states that respondent admits several paragraphs of the petition. Further, the agreement states that respondent's plea of admission and the court's exercise of jurisdiction would "be held in abeyance," while respondent participated in services. Accordingly, the agreement authorized dispositional proceedings to begin before formal adjudication. Specifically, respondent agreed to comply with a service plan including residential treatment, outpatient services, random drug screens, and a no contact order. The agreement also provided for supervised parenting time. As the case progressed, it became clear that respondent was not making significant progress, and eventually, the trial court accepted respondent's plea of

admission and took formal jurisdiction over the minor children following a dispositional review hearing held on January 31, 2013.

The order following the dispositional review hearing dated February 4, 2013, constituted the trial court's formal order of adjudication because it was the first order wherein the trial court formally exercised its jurisdiction pursuant to the mediation agreement. The same order also constituted an "order of disposition placing a minor under the supervision of the court or removing the minor from the home," under MCR 3.993(A)(1). The order noted that the minor children were removed from respondent's care, that reasonable efforts to finalize the court-approved permanency plan of reunification were made, and that the children would continue to remain under the care and supervision of petitioner. It also authorized petitioner to file a supplemental petition requesting termination of respondent's parental rights. Therefore, because under the February 4, 2013 order the trial court formally exercised its jurisdiction over the minor children and placed the minor children under the supervision of petitioner, it constituted an order that was appealable as of right under MCR 3.993(A)(1). As a result, respondent was required to raise her jurisdictional challenges in an appeal of the February 4, 2013 order. Because respondent instead waited until after the filing of a supplemental petition seeking termination, a termination hearing, and an order terminating her parental rights before challenging the trial court's exercise of jurisdiction, her challenges on appeal to the trial court's exercise of jurisdiction constitute an impermissible collateral attack and we will not consider the merits of her argument. See *In re SLH*, 227 Mich App at 668 (explaining that an adjudication cannot be collaterally attacked when a termination occurs following the filing of a supplemental petition for termination after the issu-

ance of the initial dispositional order); *In re Gazella*, 264 Mich App at 680 (holding that the respondent lost her right to challenge the court's exercise of jurisdiction because she failed to appeal the original order of disposition).

Affirmed.

SAWYER, J., concurred with HOEKSTRA, P.J.

GLEICHER, J. (*dissenting*). Because child protective proceedings implicate constitutionally protected liberty interests, our Supreme Court promulgated court rules designed to safeguard parents' due process rights. One rule, MCR 3.971, addresses the procedures that control a court's assumption of jurisdiction over the child when the respondent makes a plea of admission or no contest. Before a court may exercise jurisdiction based on a parent's plea, it must satisfy itself that the parent knowingly, understandingly, and voluntarily waived certain rights. MCR 3.971(C)(1). Here, no dialogue between court and parent took place. The mediation procedure employed as a substitute for an adjudicative trial improperly bypassed the due process protections enshrined in the court rules. Thus, in my view the court never obtained jurisdiction.

After ignoring due process requirements for pleas of admission, the circuit court sidestepped MCR 3.977(E)(3), which provides that when termination occurs at the initial disposition hearing, only legally admissible evidence may be introduced. And because termination occurred at initial disposition, respondent's appeal does not qualify as a collateral attack. Accordingly, I respectfully dissent from the majority's contrary conclusions and would vacate the termination order.

### I. BACKGROUND

In January 2012, the Department of Human Services (DHS) filed a petition to remove the respondent-mother's three children from her custody based on respondent's heroin addiction and her violent relationship with her live-in boyfriend. At the preliminary hearing, respondent conceded that probable cause existed to take her children into care and to continue their foster placement. The family court referee ordered the parties to participate in a pilot mediation program.

Mediation occurred on February 28, 2012. A signed "mediation resolution" provided that "[b]ased on the agreement of all parties, the mother's Plea of Admission and the issue of jurisdiction will be held in abeyance for a period of six months." Respondent stipulated to a case service plan, that visitation with the children would be supervised at the discretion of the DHS, and that the court would schedule a "review hearing" within 90 days. The family court judge assigned to the matter signed the agreement with the notation, "This Mediation Agreement is the order of the Court."

That same day, the parties placed into the court record a document titled, "Entry of plea pursuant to MCR 5.971 as part of mediation."[1] The document provided:

> 3. I am a participant in this mediation; I understand the allegations in the petition regarding the child(ren) identified on this document and I waive (give up) my right to have those allegations read to me on the record or stated to me in writing; I have read the petition.
>
> 4. I understand I have the right to an attorney at this mediation and every other hearing this matter.

---

[1] MCR 5.971 was superseded by MCR 3.971 in 2003, nine years before this plea was entered.

5. If the Court accepts my plea of admission or no contest, I understand I will give up the following rights:

a) To have a trial before a judge or a jury;

b) To have the petitioner prove the allegations in the petition by a preponderance of the evidence (more than half);

c) To have witnesses against me appear and testify under oath at the trial;

d) To cross-examine (meaning "to question") the witnesses;

e) To have the court order to come to the trial any witnesses I believe could testify in my favor, or to subpoena them.

❖  ❖  ❖

7. I understand the plea, if accepted by the court, could later be used to terminate my parental rights to the child(ren) identified on this document.

8. I know I do not have to offer this plea; I have made up my own mind to do it.

9. I have thought about everything that might happen if the court accepts this plea.

10. I understand everything in this document.

11. Nothing has been promised to me unless a plea bargain has been described on the attached mediation report form.

On the plea form, respondent admitted the allegations in paragraphs 8 through 14 of the DHS's January 11, 2012 petition. Specifically, respondent admitted that a Children's Protective Services case was opened in November 2011, due to domestic violence and drug abuse. Respondent conceded that she had agreed to services at that time but those services insufficiently protected the children from continuing harm. Respondent admitted that she had not maintained contact with her

caseworker, rendering him or her unable to monitor the children's safety. Respondent also admitted that she had supplied no verification that she was receiving treatment for her substance abuse and had tested positive for opiates and cocaine at her random drug screens. She further admitted the domestic violence incident between her and her boyfriend.

Respondent provided no testimony in conjunction with the mediation and no evidence of record suggests that the court made inquiry to ascertain whether she intelligently and voluntarily agreed to the plea-abeyance procedure, or whether the plea was accurate.[2]

Over the next several months, the DHS provided services to respondent consistent with the case service plan. Respondent was generally uncooperative. The court conducted periodic "dispositional review" hearings that respondent failed to attend. At a January 31, 2013 hearing, the caseworker indicated that the agency wanted to proceed toward termination given respondent's lack of progress. The court noted that no adjudication order had been entered:

> [I]f there hasn't been an established jurisdictional level, based on the mediation, *I will take at this point, formal jurisdiction as an Act 87 ward*. I think there probably is an order or something to that effect in the file, but if there's not, there will be as of today based . . . on the stipulated mediation results. That's the purpose, my understanding, of the mediation was to avoid the need for a Jury trial and findings and putting people through that. Now, the failure to comply since August . . . by the mother is a post-mediation event, so I think that I can go back and say that

---

[2] The lower court docket sheet indicates that a dispositional review hearing occurred on February 29, 2012. No such hearing took place. Rather, the court recorded receipt of the mediation agreement and accompanying document on that date.

we have a basis for jurisdiction, we have a basis for
placement. [Emphasis added.]

The court "ma[d]e a finding" that respondent had
"absented herself." The court then approved the DHS's
request to file an amended petition seeking termination
of parental rights.

On February 4, 2013, the court formally entered an
"order following dispositional review/permanency plan-
ning hearing" An attached page provided, "Based upon
the stipulated Mediation Resolution, the court takes
formal jurisdiction of the minor children as an Act 87
Ward" and "DHS may file a supplemental pleading
setting forth termination of parental rights of any of the
three parents, if warranted. Court is not ordering DHS
to file the petition."

On March 13, 2013, the DHS filed a supplemental
petition. The petition described the mediation agreement
and the offered services, as well as respondent's failure to
comply with and benefit from her case service plan and
her disappearance from the proceedings. The DHS alleged
that respondent had not rectified the conditions that led
to adjudication and had deserted her children, a new
ground supporting termination. The DHS sought termi-
nation pursuant to MCL 712A.19b(3)(a)(ii) (desertion),
(c)(i) (failure to remedy the conditions leading to adjudi-
cation and inability to do so within a reasonable time), and
(g) (failure to provide proper care and custody).

The court conducted neither an initial dispositional
hearing nor any dispositional review hearings between
the January 2013 adjudication and the June 26, 2013
termination hearing. After taking testimony from the
DHS caseworker and hearing argument from the par-
ties, the court took a termination ruling under advise-
ment. The court thereafter found termination sup-

ported under all cited factors and determined that termination served the children's best interests.

## II. IMPROPER ADJUDICATION

I respectfully disagree with the majority's determination that respondent's attack on the adjudication order qualifies as collateral. As stated by the majority, a trial court's jurisdictional decision cannot be attacked collaterally following the termination of parental rights. *In re SLH*, 277 Mich App 662, 668; 747 NW2d 547 (2008).

> That is true, however, only when a termination occurs following the filing of a supplemental petition for termination after the issuance of the initial dispositional order. If termination occurs at the initial disposition as a result of a request for termination contained in the original, or amended, petition for jurisdiction, then an attack on the adjudication is direct and not collateral, as long as the appeal is from an initial order of disposition containing both a finding that an adjudication was held and a finding that the children came within the jurisdiction of the court. [*Id.* at 668-669.]

The court did not take jurisdiction over the children until February 2013, when it entered the plea secured during the mediation session. No hearing occurred on that date. The court then "proceeded to determine at the initial dispositional hearing whether respondent['s] parental rights should be terminated." *In re VanDalen*, 293 Mich App 120, 131; 809 NW2d 412 (2011). The June 26, 2013 hearing constituted the initial dispositional hearing following adjudication. Therefore, respondent is free to challenge the adjudication as well as the termination.

The majority holds that the February 4, 2013 order through which the court took jurisdiction qualified as

the initial dispositional hearing, and triggered respondent's right to appeal the adjudication as of right pursuant to MCR 3.993(A)(1).[3] However, the court rules provide that unless the initial dispositional hearing "is held immediately after the trial, notice of hearing may be given by scheduling it on the record in the presence of the parties or in accordance with MCR 3.920." MCR 3.973(B). No evidence supports that the court properly noticed or ever actually scheduled a dispositional hearing. Nor did the court ever enter an order of disposition as required under MCR 3.973(F)(1), which would have started the clock for appellant's appeal as of right regarding the adjudication.

Moreover, the process by which the court took jurisdiction over the children contravened the court rules. A court may take jurisdiction over a child only if "at least one statutory ground for jurisdiction contained in MCL 712A.2(b)" is proven at an adjudicative trial under MCR 3.972, or following a plea to the allegations in the jurisdictional petition obtained pursuant to the procedures detailed in MCR 3.971. *In re SLH*, 277 Mich App at 669. Participation in mediation is not an invitation to circumvent due process. Here, the court lacked the authority to take jurisdiction over the children because it did not follow the procedures mandated by the court rules.

MCR 3.971 provides for the acceptance of pleas of admission or no contest to court jurisdiction. Subrule (B) demands the court to advise a respondent of various rights before accepting a plea. That advice must be "on

---

[3] Notably, the DHS disagrees with this analysis. The DHS contends that the adjudication occurred in February 2012, contemporaneous with the mediation. According to the DHS, the hearing that followed the mediation in May 2012, "was docketed and noticed on [sic] as a Review Hearing, although it probably should have been called a disposition hearing."

the record or in a writing that is made a part of the
file[.]" MCR 3.971(B). MCR 3.971(C) places duties on
the court that simply cannot be extinguished by media-
tion:

> (1) *Voluntary Plea.* The court shall not accept a plea of
> admission or of no contest *without satisfying itself* that the
> plea is knowingly, understandingly, and voluntarily made.
>
> (2) *Accurate Plea.* The court shall not accept a plea of
> admission or of no contest without establishing support for
> a finding that one or more of the statutory grounds alleged
> in the petition are true, *preferably by questioning the
> respondent unless the offer is to plead no contest.* If the plea
> is no contest, the court shall not question the respondent,
> but, by some other means, shall obtain support for a
> finding that one or more of the statutory grounds alleged in
> the petition are true. The court shall state why a plea of no
> contest is appropriate. [Emphasis added.]

There is no record that the court satisfied itself that
respondent's plea was voluntary or accurate. In Febru-
ary 2012, the court memorialized the agreement with-
out taking testimony. According to the county prosecu-
tor, it was common practice to simply fax the mediation
agreement and any plea to the court. This practice
violates the court rules. The court conducted no analy-
sis to "satisfy[] itself" that the plea was voluntary as
mandated by MCR 3.971(C)(1). The court replicated
this error in February 2013, when it entered the plea
with no consideration of its voluntariness. The court
also made no attempt to test the accuracy of the plea,
either when the agreement was reached or when the
court entered the order. MCR 3.971(C)(2) clearly forbids
a court from entering a plea without determining its
accuracy.

The court's action even violated the mediation agree-
ment. The agreement provided that the plea of admis-
sion would be held in abeyance. The agreement did not

state that the plea would be deemed accurate at a remote time when the plea was accepted as entered by the court. The agreement did not grant permission to avoid court rule procedures adopted to protect a parent's fundamental rights.

The court compounded its errors after the 2012 filing of the mediation agreement. MCR 3.973(A) provides for dispositional hearings only after the child is "properly within [the court's] jurisdiction . . . ." In my view, the children never properly came within the court's jurisdiction, and the court lacked authority to conduct any dispositional review hearings in the interim.

### III. TERMINATION BASED ON INADMISSIBLE EVIDENCE

Assuming that a valid adjudication took place, termination of respondent's parental rights was accomplished at an initial dispositional hearing. Under MCR 3.977(E)(3), the court was required to find by "clear and convincing legally admissible evidence" that termination was supported by at least one statutory ground. And because the prosecutor sought termination based on a supplemental petition, legally admissible evidence was required. *In re DMK*, 289 Mich App 246, 257-258; 796 NW2d 129 (2010). Respondent claims, and I agree, that termination was based on hearsay evidence in violation of these rules.

Jessica Holtrop was the sole witness at the termination hearing. Holtrop was the Sanilac County caseworker assigned in May 2012, four months after the children's removal from their mother's care. The children had since been moved—the younger two into the care and custody of their fathers, one in Ogemaw County, and the eldest into the care of his stepgrandparents. Respondent had also moved—she was incarcerated briefly in Wayne County and remained

there after her release. Accordingly, "courtesy" case-
workers were assigned in Ogemaw and Wayne counties.
The prosecutor elected against presenting any other
caseworker's testimony at the hearing and also chose
not to present the testimony of any service provider. As
a result, Holtrop provided secondhand reports.

In relation to respondent's drug-testing requirement,
the court improperly allowed Holtrop to testify about a
positive drug screen before she was assigned to the case.
Holtrop had acquired personal knowledge since her
involvement, however, that respondent's participation
in required drug screens had been poor. She testified
that respondent had failed to call in or appear when
under court order to be tested twice a week and had
appeared only four times during a period when daily
testing was required.

Holtrop admitted that she had no personal knowl-
edge regarding respondent's performance in substance
abuse treatment. She reported information relayed by
the provider that respondent had completed intake
procedures in June 2012. Thereafter respondent at-
tended only three appointments and the provider dis-
charged her for noncompliance. Holtrop was able to
testify from personal experience that respondent pro-
vided no information indicating that she had found
alternative substance abuse treatment. Holtrop suspected
that respondent had transportation issues that impeded
her participation in services. Accordingly, in the fall of
2012, Holtrop referred respondent to various outreach
services that traveled to the client. Holtrop testified that
the outreach substance abuse treatment provider indi-
cated that it cancelled services on January 24, 2013,
because respondent failed to call in to make appointments
and the provider could not reach her. Holtrop claimed that

she did not make additional referrals after that point because respondent had not contacted her and was not returning her calls.

Holtrop also testified regarding respondent's participation in a parental education and counseling outreach program. Respondent allegedly took part in five sessions, but the counselor reported that respondent showed "minimal involvement." After these five sessions, respondent stopped participating. The counselor informed Holtrop that respondent either was not home or did not answer her door when they came. Holtrop admitted she had no personal knowledge of respondent's participation during her in-home parenting classes. Rather, she repeated the counselor's report that respondent "presented as very frustrated and unwilling to work on the issues that needed to be worked on."

Holtrop testified that respondent was permitted supervised visitation with her children between January 11 and August 2, 2012. Only five visits occurred during that time, despite that respondent was allowed weekly parenting time. Three of the visits occurred before Holtrop was assigned the case. Moreover, Holtrop did not supervise the visits—the eldest child's step-grandparents who served as his foster placement, supervised visitation with the children. They reported to Holtrop that respondent was "very distracted" during the visits and did not "interact with the children as fully as a mother should." She also testified that the middle child's courtesy worker in Ogemaw County repeated the child's report that he did not want to return to his mother's care and custody because of her drug use. Holtrop was aware that respondent had telephone contact with her eldest son, but she was uncertain regarding the frequency of those contacts. Holtrop also testified, "I was told that

she did send [the children] letters when she was incarcerated" in September 2012. Holtrop further testified that she knew respondent had failed to attend several supervised parenting-time sessions because they took place in West Branch and she was living in Decker and then Wayne County, with no transportation to the distant visits.

Respondent's conduct was far from commendable. Nevertheless, the court rules required that legally admissible evidence support the grounds for terminating her parental rights. The vast majority of petitioner's evidence was hearsay from Holtrop regarding the statements and reports of others. Because of the irregular and improper manner in which the court took jurisdiction, the prosecutor incorrectly believed that such hearsay evidence would suffice. I would vacate the order terminating respondent's parental rights and remand for a new hearing at which respondent would face admissible evidence in support of petitioner's claims.