# Court of Appeals, State of Michigan

## ORDER

In re S. KANJIA, Minor

Docket No. 320055

LC No. 11-053881-NA

Stephen L. Borrello
Presiding Judge

Deborah A. Servitto

Douglas B. Shapiro
Judges

---

The Court orders that the October 21, 2014 opinion is hereby AMENDED. The signature block on page 11 of the slip opinion shall now read as follows: Douglas B. Shapiro, Stephen L Borrello, and Deborah A. Servitto.

The Clerk is directed to provide a copy of this order to the Reporter's Office so the change can be incorporated into the opinion during the publishing process.

In all other respects, the October 21, 2014 opinion remains unchanged.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

OCT 23 2014
Date

Chief Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

In re S. KANJIA, Minor.

FOR PUBLICATION
October 21, 2014
9:00 a.m.

No. 320055
Kent Circuit Court
Family Division
LC No. 11-053881-NA

Before: BORRELLO, P.J., and SERVITTO and SHAPIRO, JJ.

SHAPIRO, J.

Respondent father appeals as of right the trial court order terminating his parental rights to the minor child under MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions causing the child to come within the court's jurisdiction) and (3)(g) (failure to provide proper care and custody). For the reasons set forth below, we affirm.

Following the entry of the termination order, respondent filed an appeal by right. On April 23, 2014, respondent's appointed appellate counsel moved this Court to allow him to withdraw his representation pursuant to MCR 7.211(C)(5), asserting that he could not identify any appellate issues of legal merit, thereby rendering the appeal wholly frivolous.[1] This Court denied the motion and ordered counsel to address two issues: (1) whether the termination must be vacated in light of our Supreme Court's opinion in *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014), and (2) whether respondent's appointed trial counsel was ineffective where counsel had no contact with respondent for ten months after her appointment and only met with respondent after the trial court had authorized the filing of a supplemental petition to terminate respondent's parental rights.[2]

---

[1] See *Anders v California*, 386 US 738; 87 S Ct 1396; 18 L Ed 2d 493 (1967).

[2] *In re S Kanjia Minor*, unpublished order of the Court of Appeals, entered June 18, 2014 (Docket No. 320055).

# I. APPLICATION OF *IN RE SANDERS*

Respondent argues that, in light of *Sanders*, his adjudication in these child protective proceedings violated his procedural due process rights.[3]

## A. ADJUDICATION IN CHILD PROTECTIVE PROCEEDINGS AND THE ONE-PARENT DOCTRINE

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Sanders*, 495 Mich at 404. "Generally, a court determines whether it can take jurisdiction over the child in the first place during the adjudicative phase." *Id*. Jurisdiction is established pursuant to MCL 712A.2(b). *Id*. "When the petition contains allegations of abuse and neglect against a parent, MCL 712A.2(b)(1), and those allegations are proved by a plea or [by a preponderance of the evidence] at the [adjudication] trial, the adjudicated parent is unfit." *Id*. at 405. "While the adjudicative phase is only the first step in child protective proceedings, it is of critical importance because the procedures used in the adjudicative hearings protect the parents from risk of erroneous deprivation of their parental rights." *Id*. at 405-406 (quotations and citation omitted).

Child protective proceedings are initiated by the state filing a petition in the family division of the circuit court requesting the court take jurisdiction over a child. *Id*. at 405. A respondent-parent may admit to allegations in the petition, plead no contest to the allegations, or demand a trial. *Id*. In any event, to take jurisdiction over a child, the trial court must find that the petitioner has proven by a preponderance of the evidence one or more of the statutory grounds for the taking of jurisdiction alleged in the petition. *Id*. If the court takes jurisdiction over the child, the proceedings enter the dispositional phase, wherein the trial court has broad authority to effectuate orders aimed at protecting the welfare of the child, including ordering the respondent-parent to comply with the Department of Human Services (DHS) case service plan and ordering the DHS to file a petition for the termination of parental rights if progress is not made. *Id*. at 406-407.

Before *Sanders* was decided, it was well-settled, pursuant to the one-parent doctrine, that a trial court was not required to adjudicate more than one parent; instead, a trial court could establish jurisdiction over a child by virtue of the adjudication of only one parent, after which it had authority to subject the other, unadjudicated parent to its dispositional authority. *Id*. at 407; *In re CR*, 250 Mich App at 202-203.

> In simpler terms, the one-parent doctrine permits courts to obtain jurisdiction over a child on the basis of the adjudication of either parent and then proceed to the dispositional phase with respect to both parents. The doctrine thus eliminates the petitioner's obligation to prove that the unadjudicated parent is unfit before that

---

[3] "Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law, which we review de novo." *In re Sanders*, 495 Mich at 403-404.

parent is subject to the dispositional authority of the court. [*In re Sanders*, 495 Mich at 408.]

However, in *Sanders*, our Supreme Court held that the one-parent doctrine violated procedural due process. *Id*. at 422. Recognizing that the right of a parent to make decisions concerning the care, custody, and control of his or her children is fundamental, *id*. at 409, and that due process "demands minimal procedural protections be afforded an individual before the state can burden a fundamental right," *id*. at 410, our Supreme Court held that a parent must be individually adjudicated as unfit before the state can interfere with his or her parental rights, *id*. at 415, 422. Because the one-parent doctrine allowed a trial court to interfere with the constitutionally protected parent-child relationship without any finding that the parent was unfit, it violated the Due Process Clause of the Fourteenth Amendment. *Id*. at 422. To comply with due process requirements, the state is required to do the following:

> When the state is concerned that *neither* parent should be entrusted with the care and custody of their children, the state has the authority—and the responsibility— to protect the children's safety and well-being by seeking an adjudication against *both* parents. In contract, when the state seeks only to deprive *one* parent of the right to care, custody and control, the state is only required to adjudicate *that* parent. [*Id*. at 421-422.]

## B. RESPONDENT'S CASE

The child protective proceedings in respondent's case began on November 29, 2011, when the DHS filed a petition requesting the removal of the child from the home of his mother,[4] who was not living with respondent at the time. The petition alleged, as statutory grounds for the taking of jurisdiction, that a parent of the child had neglected or refused to provide proper care and support, MCL 712A.2(b)(1), and that the home environment, by reason of neglect, cruelty, drunkenness, criminality or depravity on the part of a parent, had become unfit for the child, MCL 712A.2(b)(2).[5] At the December 1, 2011 preliminary hearing, at which respondent was not present, the trial court found probable cause that one or more of the allegations in the petition was true and authorized the filing of the petition. The court then placed the child with the DHS, which subsequently placed the child in a licensed foster home.

An adjudication hearing was held on January 20, 2012. Respondent was present at the hearing. The child's mother pleaded no contest to the allegations in the petition. The trial court found that grounds for jurisdiction over the child pursuant to MCL 712A.2(b) existed based on mother's plea and independent evidence substantiating the allegations in the petition.

The trial court in this case clearly applied the one-parent doctrine when subjecting respondent to its dispositional authority, and consequently, under *Sanders*, respondent's due

---

[4] The child's mother is not party to this appeal.

[5] The particular facts of the petition are irrelevant to this issue on appeal.

process rights were violated when his parental rights were terminated. The original petition focused on mother, and contained only two allegations concerning respondent—that he was the putative father of the child and that mother had previously been involved with the DHS because of domestic violence with respondent. Mother entered a no-contest plea to the allegations against her, thereby allowing the trial court to assume jurisdiction over the child. However, petitioner did not pursue any allegations against respondent at the adjudication trial and respondent did not enter a plea. Consequently, he was never adjudicated as unfit by the trial court. In fact, the trial court's February 13, 2012 order of adjudication did not even name respondent himself as a respondent. Nonetheless, respondent was subjected to the trial court's dispositional authority; he was ordered to comply with a parent-agency treatment plan and ultimately his parental rights were terminated. Thus, under *Sanders*, respondent's due process rights were violated.

Despite the merit of respondent's claim, whether he is entitled to relief depends on two questions: first, whether he may now raise the issue for the first time on direct appeal from the order of termination, and second, whether *Sanders* applies retroactively to his case, which was pending on appeal at the time *Sanders* was decided. We hold that, while the former question must be answered in the affirmative, the latter question must be answered in the negative because, while *Sanders* has limited retroactive effect, respondent failed to preserve the issue.

## C. COLLATERAL ATTACK

It is a well-settled rule that "[o]rdinarily, an adjudication cannot be collaterally attacked following an order terminating parental rights" unless "termination occur[ed] at the initial disposition as a result of a request for termination contained in the original, or amended, petition[.]" *In re SLH*, 277 Mich App 662, 668-669; 747 NW2d 547 (2008). Instead, "[m]atters affecting the court's exercise of its jurisdiction may be challenged only on direct appeal of the jurisdictional decision[.]" *In re Gazella*, 264 Mich App 668, 679-680; 692 NW2d 708 (2005), superseded by statute in part on other grounds, MCL 712A.19b(5); *In re Hatcher*, 443 Mich 426, 437; 505 NW2d 834 (1993) (whether a trial court properly exercised jurisdiction over a child can only be challenged on direct appeal). We have continually invoked this rule to preclude collateral challenges to a trial court's exercise of jurisdiction, including in cases—before *Sanders* was decided—where the challenge related to the trial court's use of the one-parent doctrine. See, e.g., *In re Wangler*, 305 Mich App 438, 447-448; ___ NW2d ___ (2014), held in abeyance ___ Mich ___ (September 9, 2014; Docket No. 149537) (holding that the respondent's challenge to the trial court's exercise of jurisdiction—based on the fact that a written plea was allegedly invalid and the fact that the respondent was not present at the adjudication trial—was collateral, and therefore precluded); *In re Curran*, unpublished opinion per curiam of the Court of Appeals, issued May 15, 2014 (Docket No. 317470), p 8 (finding that the respondent mother had waived any challenge to the trial court's adjudication, "ostensibly based on the one-parent doctrine," by failing to directly appeal the jurisdictional decision); *In re Coleman*, unpublished opinion per curiam of the Court of Appeals, issued June 18, 2013 (Docket No. 313610), p 4 (declining to examine the substance of the respondent's argument that the trial court "misapplied the one-

parent doctrine to obtain jurisdiction" because the argument "constitute[d] a collateral attack regarding adjudication-jurisdiction matters").[6]

Assuming a *Sanders* challenge constitutes an attack on jurisdiction, respondent is generally precluded from now raising the issue since it would constitute a collateral attack; his rights were terminated following a supplemental petition and he did not appeal the initial order of adjudication. However, no case has yet decided whether the rule prohibiting collateral attack of a trial court's exercise of jurisdiction applies to cases in which the rule announced in *Sanders* applies. In the only case decided since *Sanders* to acknowledge this issue, a panel of this Court expressly declined to address "whether a *Sanders*-related challenge may be raised as a collateral attack on appeal." *In re Cochran*, unpublished opinion per curiam of the Court of Appeals, issued July 22, 2014 (Docket No. 319813), p 4 n 5.[7] Notably, this Court in *Cochran*, *id*., implicitly concluded that a *Sanders* challenge to a trial court's order of termination constitutes a collateral attack on the trial court's exercise of jurisdiction, and other opinions from this Court have expressly declared that a challenge to the trial court's use of the one-parent doctrine constitutes a collateral attack on jurisdiction. See *In re Curran*, unpub op at 8; *In re Coleman*, unpub op at 4.

Nonetheless, we conclude that a *Sanders* challenge, raised for the first time on direct appeal from an order of termination, does not constitute a collateral attack on jurisdiction, but rather a direct attack on the trial court's exercise of its dispositional authority. In *Sanders*, our Supreme Court distinguished between adjudicated and unadjudicated parents; it held that "due process requires a specific adjudication of a parent's unfitness before the state can infringe the constitutionally protected parent-child relationship." *In re Sanders*, 495 Mich at 422. In other words, the Court in *Sanders* held that due process prevents a trial court from entering dispositional orders—including orders of termination—against an unadjudicated respondent. Based on this reasoning, a respondent who raises a *Sanders* challenge on direct appeal from a trial court's order of termination does not collaterally attack the trial court's exercise of jurisdiction, but rather directly challenges the trial court's decision to terminate the respondent's parental rights without first having afforded the respondent sufficient due process, i.e., an adjudication hearing at which the respondent's fitness as a parent was determined.

---

[6] "Although unpublished opinions of this Court are not binding precedent, they may, however, be considered instructive or persuasive." *Paris Meadows, LLC, v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010) (citations omitted).

[7] In *Cochran*, this Court first noted the general rule prohibiting collateral attacks on a trial court's exercise of jurisdiction, after which it concluded that the respondent was "barred from attacking the trial court's adjudication." *In re Cochran*, unpub op at 4 n 5. However, this Court nevertheless addressed the issue because the respondent's appeal was pending at the time *Sanders* was decided. *Id*. It did so, however, without deciding whether, in other cases, a *Sanders* challenge could be raised on collateral attack from an order of termination. *Id*. This Court ultimately found the respondent's argument to be without merit. *Id*. at 4.

It also noteworthy that in finding the one-parent doctrine unconstitutional, the Court in *Sanders* recognized the inherent problem in requiring an unadjudicated parent to directly appeal an order of adjudication: "as a nonparty to those proceedings, it is difficult to see how an unadjudicated parent could have standing to appeal any unfavorable ruling." *In re Sanders*, 495 Mich at 419. Such is the case here. Because respondent was never adjudicated, and in fact was not named as a respondent in the trial court's order of adjudication, it is difficult to see how he could have appealed that order of adjudication. The hurdles to a direct appeal from the order of adjudication are further demonstrated by the fact that, in the instant case, respondent did not have an attorney at the time the trial court entered its order of adjudication. Thus, it would have been exceedingly difficult, if not effectively impossible, for respondent to have challenged the trial court's exercise of jurisdiction in a direct appeal from the order of adjudication.

Accordingly, we find that the general rule prohibiting a respondent from collaterally attacking a trial court adjudication on direct appeal from a termination order does not apply to cases where a respondent raises a *Sanders* challenge to the adjudication. Therefore, we hold that respondent is entitled to raise his *Sanders* challenge on direct appeal from the trial court's order of termination, notwithstanding the fact that he never appealed the initial order of adjudication.

## C. RETROACTIVITY

Because we conclude that respondent is entitled to raise his *Sanders* challenge on direct appeal from the trial court's order of termination, we must next decide whether the holding in *Sanders* applies to his case.[8] *Sanders* was not decided until June 2, 2014, approximately six months after the trial court terminated respondent's parental rights. However, respondent's appeal was pending before this Court at the time *Sanders* was decided.

"'The general rule in Michigan is that appellate court decisions are to be given full retroactivity unless limited retroactivity is justified.'" *Jahner v Dep't of Corrections*, 197 Mich App 111, 113; 495 NW2d 168 (1992), quoting *Fetz Engineering Co v Ecco Systems, Inc*, 188 Mich App 362, 371; 471 NW2d 85 (1991). "'[L]imited retroactivity' is the favored approach 'when overruling prior law.'" *Jahner*, 197 Mich App at 114, quoting *Tebo v Havlik*, 418 Mich 350, 360; 343 NW2d 181 (1994). Moreover, "[p]rospective application is warranted when overruling *settled* precedent or deciding cases of first impression whose result was not clearly foreshadowed." *Jahner*, 197 Mich App at 114 (quotation marks and citation omitted); *Lindsey v Harper Hosp*, 455 Mich 56, 68; 564 NW2d 861 (1997) ("[W]here injustice might result from full retroactivity, this Court has adopted a more flexible approach, giving holdings limited retroactivity or prospective effect."). Decisions that are given limited retroactivity apply to pending cases where the issue was raised and preserved. *McNeel v Farm Bureau Gen Ins Co of Mich*, 289 Mich App 76, 95 n 7; 795 NW2d 205 (2010); *Jahner*, 197 Mich App at 115-116. To the contrary, decisions that are applied only prospectively "do not apply to cases still open on direct review" or to "the parties in the cases in which the rules are declared." *McNeel*, 289 Mich App at 94. "In deciding whether to give retroactive application, '[t]here are three key factors' to

---

[8] The retroactivity of a court's ruling presents of a question of law reviewed de novo. *People v Maxson*, 482 Mich 385, 387; 759 NW2d 817 (2008).

be considered: '(1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the administration of justice.'" *Jahner*, 197 Mich App at 114, quoting *People v Hampton*, 384 Mich 669, 674; 187 NW2d 404 (1971).

As a threshold matter, we find that full retroactivity of the rule in *Sanders* is not justified. In holding that the one-parent doctrine is unconstitutional, the *Sanders* Court overruled *CR*, a decision of this Court which had earlier adopted the doctrine based on its interpretation of Subchapter 3.900 of the Michigan Court Rules, because this Court's interpretation "fail[ed] to recognize the unique constitutional protections that must be afforded to unadjudicated parents[.]" *In re Sanders*, 495 Mich at 407-408, 414. *CR* was decided in 2001 and had been relied upon in numerous cases to assert jurisdiction over unadjudicated parents. See, e.g., *In re LE*, 278 Mich App 1, 17-18; 747 NW2d 883 (2008). It is apparent that because the one-parent doctrine established in *CR* was clear and uncontradicted until *Sanders*, full retroactivity is not justified. *McNeel*, 289 Mich App at 94-95. Because *Sanders* overruled clear prior caselaw, there is a colorable argument that its holding could be limited to prospective application only. *Id.*; *Jahner*, 197 Mich App at 114.

Nonetheless, we hold that *Sanders* should be given limited retroactivity. At the outset, the *Sanders* Court itself applied its holding to the respondent in that case, thus indicating that it did not intend for its holding to apply only prospectively. *McNeel*, 289 Mich App at 95 ("[I]t is clear that this Court has already concluded that [a previous Court of Appeals decision] did not apply prospectively only because it applied its holding to the three cases consolidated in [that opinion] and ruled that the plaintiffs in all three cases were entitled to [relief]."). Further, as noted above, this Court has already applied *Sanders* retroactively to a case pending on appeal when *Sanders* was decided. *In re K Smith Minor*, unpub order. Finally, the application of the factors discussed in *Jahner* weighs, on the whole, in favor of limited retroactivity to those cases pending on appeal when *Sanders* was decided. *McNeel*, 289 Mich App at 95.

With respect to the first factor, the purpose of the new rule, *Jahner*, 197 Mich App at 114, there can be no doubt that the purpose was to ensure that parents are afforded sufficient procedural due process before a trial court interferes with their fundamental right to the care, custody, and control of their child. See *In re Sanders*, 495 Mich at 409-410, 421-422. The importance of such a purpose "cannot be overstated," *id.* at 415, since the adjudication trial "is the only fact-finding phase regarding parental fitness" and no other phase of the proceedings adequately prevents the possible erroneous deprivation of this fundamental right, *id.* at 417-418. The purpose would be served by giving the rule in *Sanders* limited retroactive effect.

With respect to the second factor, reliance on the old rule, *Jahner*, 197 Mich App at 114, the one-parent doctrine has been relied upon in numerous cases since *CR* was decided, including the instant case. See, e.g., *In re Sanders*, 498 Mich at 413; *In re LE*, 278 Mich App at 17-18. Until *Sanders* was decided, the DHS and the trial court would have been justified in relying on *CR* and the one-parent doctrine. This factor therefore weighs against retroactivity of any kind, as it would burden the state with additional procedures in cases where it had justifiably relied upon the one-parent doctrine.

Finally, with respect to the third factor, the effect on the administration of justice, *Jahner*, 197 Mich App at 114, applying *Sanders* retroactively would undoubtedly burden the state. *In re*

*Sanders*, 495 Mich at 417 ("There is no doubt that requiring adjudication of each parent will increase the burden on the state in many cases."). However, requiring adjudication of each parent before subjecting that parent to the trial court's dispositional authority also "significantly reduce[s] any risk of a parent's erroneous deprivation of the parent's right to parent his or her children[,]" *id*., a risk which outweighs any burden imposed upon the state, *id*. at 418-419. We conclude that requiring full retroactivity of the rule in *Sanders* "could create chaos," *Jahner*, 197 Mich App at 115, inasmuch as it could result in a flood of new appeals that could disrupt the finality of many decisions, but that limited retroactivity would lessen the disruptive effect while still serving the purpose espoused in *Sanders*.

In sum, because *Sanders* overruled settled caselaw and created a new rule of law, it should not be given full retroactive effect. However, limited retroactivity is justified since (1) the *Sanders* Court itself applied the rule it announced to the parties in that case; (2) the three factors discussed in *Jahner*, weigh, on the whole, in favor of limited retroactivity; and (3) this Court has already seen fit to apply *Sanders* to a case pending on appeal when *Sanders* was decided.

Notwithstanding the above conclusion, where a decision is given limited retroactive effect, it applies only to cases then pending where the issue was raised and preserved. *McNeel*, 289 Mich App at 95 n 7; *Jahner*, 197 Mich App 115-116. In this case, it is clear that the validity of the one-parent doctrine was not raised in the trial court; rather, it was raised for the first time on appeal, and only after this Court specifically directed respondent's appellate attorney to brief the issue.[9] Accordingly, our holding that *Sanders* must be given limited retroactive effect does not entitle respondent to relief. *Id*.

## D. CONCLUSION

We hold that a respondent may raise a *Sanders* challenge to a trial court's adjudication in a child protective proceeding on direct appeal from the trial court's order terminating that respondent's parental rights. That is, such an appeal does not constitute an impermissible collateral attack on the trial court's adjudication. We further hold that *Sanders* is to be given limited retroactivity; its holding applies only to cases then pending when *Sanders* was decided, where the issue was raised and preserved. Accordingly, because respondent failed to raise and preserve the *Sanders* issue in the trial court, he is not entitled to relief on his *Sanders* challenge.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

We now address whether respondent was deprived of the effective assistance of his trial counsel.[10]

---

[9] Indeed, during the nearly three years since respondent's adjudication, neither he nor his appointed attorneys raised a due process argument until ordered to do so by this Court.

[10] In his brief on appeal, respondent's appellate counsel concedes that respondent's trial counsel was *not* constitutionally ineffective, writing that he "cannot provide adequate legal or factual

-8-

Although the constitutional provisions explicitly guaranteeing the right to counsel apply only in criminal proceedings, the right to due process also indirectly guarantees assistance of counsel in child protective proceedings. Thus, the principles of effective assistance of counsel developed in the context of criminal law apply by analogy in child protective proceedings. [*In re EP*, 234 Mich App 582, 597-598; 595 NW2d 167 (1999), overruled on other grounds by *In re Trejo*, 462 Mich 341; 612 NW2d 407 (2000).][11]

The right to the effective assistance of counsel is guaranteed by the United States and Michigan constitutions. US Const Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039, 80 L Ed 2d 657 (1984); *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *Swain*, 288 Mich App at 643. "To prove a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below objective standards of reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different." *Id*.; see *In re CR*, 250 Mich App at 198.

The basis for respondent's claim that his trial counsel's performance was objectively unreasonable is the fact that trial counsel failed to have any contact with respondent until approximately ten months after she was appointed. Specifically, the record indicates that counsel was appointed to represent respondent at the August 28, 2012 dispositional review hearing. Nonetheless, there is no indication in the record that counsel had any contact with respondent for approximately ten months, after the trial court had authorized the DHS to file a supplemental petition seeking the termination of respondent's parental rights. We conclude that counsel's failure to make contact with respondent until approximately ten months after she was appointed fell below an objective standard of reasonableness. *Swain*, 288 Mich App at 643.

However, we conclude that respondent is not entitled to relief because he cannot demonstrate that, but for trial counsel's objectively unreasonable conduct, there is a reasonable probability that the outcome of the proceedings would have been different. *Id*. Respondent and his girlfriend testified that respondent's initial failure to engage in services resulted from his apparent misunderstanding about his role in the child protection proceedings; in particular, his apparent misunderstanding that his parental rights could be terminated if he refused to comply with the parent-agency treatment plan. However, these assertions are contradicted by other record evidence. There was testimony that respondent was aware from the outset of the

support for the ineffective assistance of counsel claim," that "trial counsel's performance . . . did not fall below and objective standard or reasonableness," and that "[t]he presumption that assistance of counsel is effective cannot be overcome in this case." Despite this concession, we will address the issue.

[11] "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

proceedings that he needed to engage in services. DHS caseworkers explained to respondent the consequences of failing to comply with the parent-agency plan, but month after month, respondent continued to refuse to engage in services and repeatedly asserted that he did not need the services. Likewise, respondent failed to maintain consistent contact with either the DHS or the child during these initial months. It was not until Child Protective Services investigated respondent's living situation with his girlfriend and other children in July 2013 that respondent decided to comply with the parent-agency treatment plan, approximately one and a half years after the beginning of proceedings regarding the child at issue on appeal. The fact that respondent was aware of his obligations, but simply neglected to meet them, is supported by respondent's own testimony at the termination hearing; in the same breath that he claimed that his confusion stemmed from his belief that the child was to be reunited with their mother, he also claimed that he had not done anything wrong. In other words, while there is some evidence that respondent initially failed to comply with services because he was genuinely confused about his role in the proceedings, there is ample contradictory evidence to support the conclusion that respondent failed to comply with services because he felt he had not done anything wrong and did not need the services.

One of respondent's biggest barriers to reunification throughout the proceedings was his inadequate parenting skills. Yet, for the first 18 months of these proceedings, respondent failed to participate in any of the ordered services designed to strengthen those skills because he felt he did not need them and, for the first year, did not visit the child at all. When parenting time visits finally did occur, respondent was inconsistent in his attendance, which greatly affected the child. When visits did occur, respondent demonstrated an inability to effectively parent the child by failing to control his behavioral outbursts. He began participating in parenting classes around July 2013; however, he sat in the back of the room talking with another father and was "disengaged." Even in the midst of the termination proceedings, respondent continued to show an inability to adequately parent the child during visits. Moreover, during a meeting after the first termination hearing, when respondent was asked about parenting skills, he responded that there were "zero" ways he could improve. He then made concerning statements about beating the child. In sum, despite having finally begun to participate in services, it was apparent at the time of termination that respondent lacked adequate parenting skills and failed to adequately participate in services and visitation. There was also no indication that he would rectify these issues within a reasonable time. Respondent cannot place blame on his trial counsel for his inadequate parenting skills nor his lack of participation services and visitation.

Accordingly, even though respondent's trial counsel's conduct was objectively unreasonable for failing to have contact with him for approximately ten months, the record supports that he was not prejudiced thereby. There was sufficient evidence that respondent was made fully aware of the consequences of failing to engage in services but nevertheless failed to participate. Moreover, he failed to demonstrate sufficient benefit when he finally did engage in services and concerns about his parenting skills persisted at the time of termination. Given the

-10-

totality of circumstances, there is no reasonable probability that, but for trial counsel's deficient performance, the result of the termination proceeding would have been different and, accordingly, respondent is not entitled to relief.

Affirmed.[12]

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ William C. Whitbeck

---

[12] Although not challenged by respondent on appeal, our review of the record reveals that the trial court did not clearly err by finding statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*ii*) and (3)(g) nor that termination was in the child's best interests. See MCR 3.977(F); *In re CR*, 250 Mich App at 194-195.