PARIS MEADOWS, LLC v CITY OF KENTWOOD

Docket No. 286978. Submitted December 2, 2009, at Grand Rapids.
     Decided January 12, 2010, at 9:10 a.m.
          Paris Meadows, L.L.C., the developer of a condominium project in
          the city of Kentwood, petitioned for review of the city's assessment
          of property taxes on certain property designated as a "convertible
          area" on the subdivision plan and defined in the master deed as
          part of the "general common elements" of the condominium
          project, asserting that the property was not subject to taxation
          separate from the condominium units. The Kentwood Board of
          Review denied the appeal and affirmed the assessment. Paris
          Meadows appealed the decision to the small claims division of the
          Tax Tribunal, which granted the city's motion for summary
          disposition, noting that, because the master deed provided that
          Paris Meadows reserved the right to contract, convert, or expand
          the condominium project (including the disputed area) for six
          years after the master deed was filed, the disputed property was
          not a true common element until the six years ran. Paris Meadows
          appealed.
               The Court of Appeals held:
               1. The Tax Tribunal erred by concluding that Paris Meadows'
          reservation of rights to develop the disputed property rendered the
          property not a common element, and thus separately taxable.
          According to the language of the master deed and the Condo-
          minium Act, MCL 559.101 et seq., the disputed property was a
          common element, in which the coowners held an undivided,
          inseparable interest, and the fact that Paris Meadows retained the
          right to withdraw or develop the property for six years did not
          vitiate this fact.
               2. The Condominium Act allows for the creation of a "convert-
          ible area," which can be either "a unit or a portion of the common
          element," wherein general or limited common elements or condo-
          minium units may subsequently be created. MCL 559.105(3).
               3. The plain language of the Condominium Act prohibits the
          separate taxation of the disputed property except through the
          condominium units. MCL 559.137(5); MCL 559.161; MCL
          559.231(1). The disputed property, as a common element, is subject

to ownership and taxation only through the individual condominium units, because the individual condominium units are owned and taxed as individual units plus their inseparable and appurtenant shares of the common elements. MCL 559.161. Property taxes may only be assessed against the individual units, not the total property of the project. MCL 559.231(1). No part of the project may be taxed separately from the units, even when the developer reserves development rights.

4. Because the owners of the disputed property are the coowners of the individual condominium units and, pursuant to MCL 211.3, where the owner of the property is known, the owner is the one to be taxed, it is unnecessary to determine whether the taxes could be assessed on the basis that Paris Meadows is the alleged agent of the coowners.

Reversed and remanded.

1. CONDOMINIUMS — WORDS AND PHRASES — COMMON ELEMENTS — CONDOMINIUM UNITS.

The "common elements" of a condominium project are the portions of the project other than the condominium units; a "condominium unit" is that portion of a project designed and intended for separate ownership and use, as described in the master deed, regardless of whether it is intended for residential, office, industrial, business, or recreational use, use as a time-share unit, or any other type of use (MCL 559.103[7], 559.104[3]).

2. CONDOMINIUMS — WORDS AND PHRASES — CONVERTIBLE AREAS.

The Condominium Act defines a "convertible area" as a unit or a portion of the common elements of the condominium project referred to in the condominium documents within which additional condominium units or general or limited common elements may be created in accordance with the act (MCL 559.105[3]).

3. CONDOMINIUMS — TAXATION.

Special assessments and property taxes shall be assessed against the individual condominium units identified as units of the condominium subdivision plan and not on the total property of the project or any other part of the project; each condominium unit, together with and inseparable from its appurtent share of the common elements, shall be a sole property subject to ownership, mortgaging, taxation, possession, sale, and all types of juridical acts, inter vivos or causa mortis independent of the other condominium units (MCL 559.161, 559.231[1]).

*Charron & Hanisch, P.L.C.* (by *David W. Charron* and *Heidi L. Hohendorf*), for petitioner.

*Law, Weathers & Richardson, P.C.* (by *Jessica L. Wood* and *Jeffrey T. Gray*), for respondent.

Before: MARKEY, P.J., and BANDSTRA and MURRAY, JJ.

MURRAY, J.

### I. INTRODUCTION

Petitioner, Paris Meadows, L.L.C., appeals as of right a July 23, 2008, judgment entered by the Michigan Tax Tribunal that granted the city of Kentwood's motion for summary disposition and denied Paris Meadows' motion for summary disposition. The central question on appeal is whether the city can tax the common element of Paris Meadows' condominium development independent of the condominium units. We hold that it cannot, and therefore reverse the decision of the Tax Tribunal and remand for further proceedings.

### II. FACTS AND PROCEEDINGS

Paris Meadows developed a residential 24-unit condominium project, and recorded a master deed for the project on December 29, 2005, in Kent County. The disputed property is designated as a "convertible area" on the subdivision plan, and is defined in the master deed as part of the "general common elements" of the condominium project. The general common elements include "[t]he land (including air space) described in Section 2.1 [setting forth the legal description of the condominium project] of this Master Deed (except for any land which is part of a Condominium Unit and any portion designated in Exhibit B as a Limited Common

Element)."[1] Paris Meadows, as the developer, reserved the right to contract or expand "all or any portion of the lands described from time to time in Section 2.1 [except for units that are sold or subject to a binding purchase agreement] by an amendment or series of amendments to the Master Deed . . . without the consent of any Co-owner, mortgagee, or other person" before six years from the date the master deed was recorded. Paris Meadows similarly reserved the right to convert, within those six years, "any General Common Element into one or more additional Condominium Units and/or into Limited Common Element(s) appurtenant to one or more Units, by an amendment . . . without the consent of any Co-owner, mortgagee, or other person." Although Paris Meadows reserved these development rights, the co-owners were granted exclusive rights to their individual units, the appurtenant limited common elements, and have an undivided interest in, "and an inseparable right to share with other Co-owners, the General Common Elements of the Project as described in this Master Deed."

This dispute originated in March 2007, when the city sent Paris Meadows a notice of assessment regarding Paris Meadows' property. The city assessed the disputed property at $240,500, and indicated a taxable value of $240,500. Paris Meadows asserted that the disputed property was not subject to separate taxation against it because the property consisted solely of the general common element area of the condominiu .a project, and no condominium units were established on the property.

Paris Meadows petitioned for review of the assessment to the Kentwood Board of Review, arguing

---

[1] The limited common elements include cable and utility lines, decks, patios, porches, driveways, sidewalks, parking areas, and heating and cooling appliances.

that the general common elements of the project were not subject to taxation under MCL 559.231 of the Michigan Condominium Act (MCA), MCL 559.101 *et seq.* The Board of Review denied Paris Meadows' appeal and sustained the assessed and taxable value of $240,500. Paris Meadows appealed that decision to the Tax Tribunal's small claims division, where it moved for summary disposition, again arguing that the disputed property consisted only of the "general common element, and not a condominium unit, pursuant to the Michigan Condominium Act."

In its response to Paris Meadows' motion for summary disposition, and in its own motion for summary disposition, the city argued—relying on *Richmond Street, LLC v City of Walker*, 16 MTTR 571 (Docket No. 337980, June 23, 2008),—that the disputed property consisted of a "convertible area," not a general common element, to which Paris Meadows had the exclusive right (for six years) to develop with additional condominium units, and noted that utilities and streets were already constructed before the master deed was recorded. The city also argued that Paris Meadows may be treated as the owner of the property and taxed as the owner, as Paris Meadows has control over the property and is the agent of the co-owners under the master deed.

The Tax Tribunal denied Paris Meadows' motion for summary disposition, and granted the city's motion for summary disposition. In doing so, the Tax Tribunal noted that because the master deed provided that the developer reserved the right to contract, convert, or expand the condominium project (including the disputed area) for six years after the master deed was filed, under its earlier decision in *Bay Harbor Yacht Club v Petoskey*, 16 MTTR 339 (Docket No. 298777, May 2,

2006), the disputed property was not a "true" common element until after the six years ran because the common element was not inseparable from the individual condominium units. Thus, the Tax Tribunal upheld the assessment on Paris Meadows for the common element.

### III. ANALYSIS

This Court reviews de novo the Tax Tribunal's decision to grant or deny a motion for summary disposition under MCR 2.116(C)(10). *Signature Villas, LLC v City of Ann Arbor*, 269 Mich App 694, 698; 714 NW2d 392 (2006). This Court must view the affidavits, pleadings, and other documentary evidence in the light most favorable to Paris Meadows, and decide whether Paris Meadows has raised a genuine issue of material fact. *Id.* at 698-699; MCR 2.116(C)(10). The central dispute in this case involves the proper interpretation and application of statutory language, which is a question of law that this Court reviews de novo. *Signature Villas, supra* at 699. "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). This Court begins by reviewing the text of the statute at issue; if the language is unambiguous, it is presumed that the Legislature intended the meaning plainly expressed, and judicial construction of the statute is not permitted. *Id.* Nothing may be read into a clear statute "that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

The tribunal's factual findings are to be affirmed if supported by competent, material, and substantial evidence. *Meadowlanes Ltd Dividend Housing Ass'n v City*

*of Holland*, 437 Mich 473, 482; 473 NW2d 636 (1991). Because we are reviewing a decision of a state agency, we give

> "respectful consideration" and [must have] "cogent reasons" for overruling an agency's interpretation. Furthermore, when the law is "doubtful or obscure," the agency's interpretation is an aid for discerning the Legislature's intent. However, the agency's interpretation is not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue. [*In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90, 103; 754 NW2d 259 (2008).]

Finally, we must recall that "the authority to impose a tax must be expressly authorized by law; it will not be inferred." *Michigan Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 477; 518 NW2d 808 (1994) (citations omitted).

As noted, the critical issue is whether the convertible property, designated as a common element, can be separately valued and assessed for taxation purposes where the condominium project developer retains the right to convert, contract, or otherwise develop the convertible property for six years. Several statutory definitions of key terms must be considered. Under the MCA, recording a master deed that complies with the MCA establishes the condominium project. MCL 559.172(1). A "condominium project" under the MCA is "a plan or project consisting of not less than 2 condominium units established in conformance with this act." MCL 559.104(1). The MCA defines "condominium unit" as "that portion of the condominium project designed and intended for separate ownership and use, as described in the master deed, regardless of whether it is intended for residential, office, industrial, business, recreational, use as a time-share unit, or any other type of use." MCL 559.104(3). A "co-owner" is defined as "a person, firm, corporation, partnership,

association, trust, or other legal entity or any combination of those entities, who owns a condominium unit within the condominium project." MCL 559.106(1). Pursuant to MCL 559.165, the co-owners are required to comply with the terms of the master deed and the association bylaws.

Importantly, "common elements" are defined as "the portions of the condominium project other than the condominium units." MCL 559.103(7). The "convertible area" is designated as "a unit or a portion of the common elements of the condominium project referred to in the condominium documents within which additional condominium units or general or limited common elements may be created in accordance with this act." MCL 559.105(3).[2] In addition, the MCA provides that when a condominium project is established, "each condominium unit, together with and inseparable from its appurtenant share of the common elements, shall be a sole property subject to ownership, mortgaging, taxation, possession, sale, and all types of juridical acts, inter vivos or causa mortis independent of the other condominium units." MCL 559.161. "Each co-owner has an exclusive right to his condominium unit and has such rights to share with other co-owners the common elements of the condominium project as are designated by the master deed." MCL 559.163.

In assessing property taxes on condominium projects, MCL 559.231 provides, in part:

> (1) Special assessments and property taxes *shall be assessed against the individual condominium units identified as units of the condominium subdivision plan and not*

---

[2] "General common elements" are "the common elements other than the limited common elements." MCL 559.106(5). "Limited common elements" are "a portion of the common elements reserved in the master deed for the exclusive use of less than all of the co-owners." MCL 559.107(2).

*on the total property of the project or any other part of the project*, except for the year in which the condominium project was established subsequent to the tax day. . . .

(2) Special assessments and *property taxes in any year in which the property existed as an established condominium project on the tax day shall be assessed against the individual condominium unit*, notwithstanding any subsequent vacation of the condominium project. Condominium units shall be described for such purposes by reference to the condominium unit number of the condominium subdivision plan and the caption of the plan together with the liber and page of the county records in which the approved master deed is recorded. Assessments for subsequent real property improvements to a specific condominium unit shall be assessed to that condominium unit description only. For property tax and special assessment purposes, each condominium unit shall be treated as a separate single unit of real property and shall not be combined with any other unit or units and no assessment of any fraction of any unit or combination of any unit with other units or fractions of any unit shall be made, nor shall any division or split of the assessment or taxes of any single condominium unit be made notwithstanding separate or common ownership of the unit. [Emphasis added.]

The master deed may allocate "an undivided interest in the common elements" to each condominium unit. MCL 559.137(1). Additionally, "the undivided interest in the common elements allocated to any condominium unit shall not be altered, and any purported transfer, encumbrance, or other disposition of that interest without the condominium unit to which it appertains is void," except where the MCA expressly provides otherwise. MCL 559.137(5).

We were recently presented with a very similar case in which we reversed the decision of the Tax Tribunal and held that where the developer retained the right to develop or remove land within the condominium project, the land could not be taxed separately from the

condominium units under MCL 559.231. *Richmond Street, LLC v City of Walker*, unpublished opinion per curiam of the Court of Appeals, issued July 14, 2009 (Docket No. 286454).[3] In *Richmond Street, LLC, supra*, 16 MTTR at 574, the master deed referred to the disputed property, an undeveloped wetland area, as the general common elements. Like our case, in the master deed the developer also reserved the right to elect, within six years of recording the deed, to contract, withdraw, expand, or convert any of the general common elements by amending the master deed without the consent of any co-owners or others. *Id.* The Tax Tribunal held that "[t]he degree of control over property by a developer in a convertible condominium project like Richmond's straddles the fence between permitted statutory control and actual control." *Id.* at 577. Examining the "market realities," the Tax Tribunal concluded that the developer "really controls the land[.]" *Id.* The Tax Tribunal noted that merely designating a piece of property as a common area, while reserving rights to the developer, does not remove the property from taxation, and found that although the option to convert or develop the property expired in six years and did not exceed the statutory limit, the property "labeled as a 'common element' is not truly a common element until after the six years have run, ending the developer's rights to expand the condominium development"; the co-owners of the units therefore did not possess an inseparable appurtenant share of the common elements until the six years elapsed. *Id.*

---

[3] Although unpublished opinions of this Court are not binding precedent, MCR 7.215(C)(1); *In re Application of Indiana Michigan Power Co*, 275 Mich App 369, 380; 738 NW2d 289 (2007), they may, however, be considered instructive or persuasive. *Id.* In the present circumstances, *Richmond Street, LLC*, provides instructive and persuasive value.

On appeal, this Court held that, according to the MCA's definitions of a condominium unit and common elements, "a condominium project consists of 'units' and 'common elements' only. Any part of the project that is not a unit *must* be a common element." *Richmond Street, LLC*, unpub op at 2 (emphasis in original). Further, this Court stated that under MCL 559.231(1) and MCL 559.161, the condominium units were properly assessed on the basis of their individual value plus the value of the common elements that was "prorated by the value of each unit and added to the unit's tax bill." *Id.* This Court concluded that the Tax Tribunal erroneously

> used its own definition of "common elements," rather than the one provided by statute, and decided that "common elements" could only include land over which all co-owners had equal control, so the land was not a common element. This reasoning is clearly contrary to the plain language of the MCA. Under the definition provided in MCL 559.103(7), *every* part of a project that is not part of a unit is a "common element." Notably, some of these common elements might include "limited common elements," which by definition are not subject to the use of all co-owners equally. MCL 559.107(2). Although a developer may retain rights to withdraw or develop land within the project, until it records an amended master deed the land remains part of the project and, under MCL 559.231, no part of the project is taxed separately from the units. The MTT failed to recognize that although units and their appurtenant common elements are inseparable, the MCA fully contemplates that the size of common elements can be altered through the means set forth in the Act. The MTT seemed to find an irresolvable conflict between petitioner's reserved rights and the MCA's provision in MCL 559.137(5) that a transfer of an interest in common elements separate from a unit is void, but that provision is only applicable "[e]xcept to the extent otherwise expressly provided by this act . . . ." [MCL 559.137(5).] Because the MCA expressly provides for the

> withdrawal or conversion of common elements, the MTT
> erred in finding that petitioner's reservation of such rights
> was contrary to the MCA. [*Id.*, unpub op at 2-3 (emphasis
> in original).]

Indicating that the Tax Tribunal "erred in imposing its view of what the statute should read instead of simply reading the definitions and provisions that the Legislature included in the act," this Court concluded that the city lacked authority under the MCA "to tax any part of a condominium project separately from the units unless that part has been withdrawn according to the procedures set forth in the MCA." *Id.*, unpub op at 3.

We agree with this rationale, and adopt it as our own. Consequently, we hold that the Tax Tribunal erred by concluding that Paris Meadows' reservation of rights to develop the disputed property rendered the property not a common element, and thus separately taxable. According to the language in the master deed and the MCA, the disputed property was a common element, in which the co-owners held an undivided, inseparable interest, and the fact that Paris Meadows retained the right to withdraw or develop the property for six years did not vitiate this fact. MCL 559.103(7); *Richmond Street, LLC*, unpub op at 2-3.

The plain language of the MCA specifically provides for the right of the developer to subsequently develop or otherwise modify property within the condominium project. For example, pursuant to MCL 559.132, if the project is an expandable project, then the master deed must explicitly include this reservation of rights by the developer, any restrictions on this election (such as co-owner consent), a time limit of not more than six years, a description of the land that may be added, the specific methods for expansion, and any limitations on the development. Where the project is a "contractable"

condominium project, the master deed must contain a reservation explicitly providing the developer with an option to elect to withdraw land, any restrictions on electing the option (such as co-owner consent), a time limit of six years, a description of the subject property, and any restrictions on withdrawing the land. MCL 559.133. Additionally, the MCA also allows for the creation of a "convertible area," which can be either "a unit or a portion of the common elements," wherein general or limited common elements or condominium units may subsequently be created. MCL 559.105(3); MCL 559.131 (providing that certain specific information regarding the potential development of convertible areas of the project must be contained in the master deed). In general, "or" is a disjunctive term, indicating a choice between two alternatives, i.e., a unit or a portion of the common elements. *Auto-Owners Ins Co v Stenberg Bros, Inc,* 227 Mich App 45, 50; 575 NW2d 79 (1997). MCL 559.141(1) specifically provides that the "developer may convert all or any portion of any convertible area into condominium units or common elements, including, without limitation, limited common elements, subject to the restrictions which the condominium documents may specify."

Similar to the Tax Tribunal in *Richmond Street, LLC,* the Tax Tribunal in the present case "seemed to find an irresolvable conflict" as a result of the fact that Paris Meadows reserved rights in the common elements that were owned by all co-owners of the condominium units. *Richmond Street, LLC,* unpub op at 2. Interpreting the MCA to preclude a developer from retaining rights in the common elements goes against the plain language of the act. The MCA clearly provides for the reservation of development rights by the developer. The Legislative intent is further demonstrated by the fact that the MCA permits the master deed to designate

what are the common elements of the condominium project and what rights the units' co-owners hold in them, as the master deed did in this case. MCL 559.163; MCL 559.137(1).

In conclusion, the plain language of the MCA prohibits the separate taxation of the disputed property except through the condominium units. MCL 559.161; MCL 559.137(5); MCL 559.231(1). The disputed property, as a common element, was subject to ownership and taxation only through the individual condominium units, because the individual condominium units are owned and taxed as individual units plus their inseparable and appurtenant shares of the common elements. MCL 559.161. Property taxes may only be assessed against the individual units, not the total property of the project. MCL 559.231(1). As this Court previously held, "no part of the project is taxed separately from the units," *Richmond Street, LLC*, unpub op at 2, even when the developer reserves development rights. MCL 559.103(7). The Tax Tribunal erred by concluding otherwise.

The city's final argument is that it could assess taxes on the disputed property against Paris Meadows because it was an agent of the co-owners. However, whether Paris Meadows was an agent of the co-owners is irrelevant, because, pursuant to MCL 211.3, if the owner of the property is known, the owner is taxed:

> Real property shall be assessed in the township or place where situated, to the owner if known, and also to the occupant, if any; if the owner be not known, and there be an occupant, then to such occupant, and either or both shall be liable for the taxes on said property, and if there be no owner or occupant known then as unknown. A trustee, guardian, executor, administrator, assignee or agent, having control or possession of real property, may be treated as the owner.

Hence, resort to the agent of the owner is not necessary because the owners of the disputed property are known: the co-owners of the individual condominium units.

Reversed and remanded. No costs, a public question being involved. We do not retain jurisdiction.