*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN WILEN,

　　　　　Plaintiff-Appellant,

v

LAW FIRM OF JOHN F. SCHAEFER,

　　　　　Defendant-Appellee.

UNPUBLISHED
September 26, 2019

No. 345848
Oakland Circuit Court
LC No. 2018-166464-CK

Before: O'BRIEN, P.J., and BECKERING and LETICA, JJ.

PER CURIAM.

In this dispute over attorney fees, plaintiff, Steven Wilen, appeals as of right the trial court's order granting summary disposition to defendant, the Law Firm of John F. Schaefer, pursuant to MCR 2.116(C)(10) (no genuine issue of material fact; movant entitled to judgment as a matter of law). Plaintiff argues on appeal that the trial court erred by making factual findings in favor of defendant and by granting summary disposition before the parties had engaged in discovery. We affirm.

## I. RELEVANT FACTS

In 2013, Patricia Anne Duque[1] approached plaintiff in anticipation of initiating divorce proceedings against her then-husband Jonathan Holtzman. Because of the size and complexity of Duque's case, plaintiff approached attorney Mark Bank for assistance. At the time, Bank was an attorney with the defendant law firm. Plaintiff, defendant, and Duque entered into a fee-agreement memorialized in a November 22, 2013 letter from defendant to Duque, which Duque also signed to confirm her agreement. According to the letter, Duque agreed to retain defendant and the Law Office of Steven H. Wilen to represent her in divorce proceedings against Holtzman. Duque also agreed to pay a $75,000 non-refundable retainer deemed earned when paid, and she agreed in principle to incentivize the attorneys to conclude the matter quickly,

---

[1] Her name was Patrician Anne Holtzman at the time.

favorably, and with as little disruption as possible. The letter informed Duque that Schaefer's hourly rate was $600, while Banks and plaintiff each billed at $400 per hour. Also discussed were costs, specific complexities of the case, and considerations that would factor into the computation of attorney fees. The 2013 fee agreement did not address any fee sharing between plaintiff and defendant or the payment of a referral fee.

In January 2014, plaintiff set an e-mail to Banks, the relevant portion of which stated: "Also, even though John is handling [P]atty, I assume we still split fees 50/50. Let me know. Steven." Bank responded the same day, "No worries on Patty. We are 50/50."

In March 2014, an incident occurred between plaintiff and Duque in an elevator after they had attended a meeting in defendant's offices. Although the parties dispute the nature of the incident, they agree on the result: Duque decided that she did not want plaintiff to have any further involvement with her case. Shortly thereafter, Duque and Holtzman reconciled. Duque attested in an affidavit submitted in support of defendant's motion for summary disposition that she never made any payments under the 2013 fee agreement.

Two years later, in April 2016, plaintiff sent Schaefer an e-mail indicating that he had heard that Duque was contemplating divorce again and asking Schaefer to call him. Schaefer responded in relevant part, "We will see what Patty does. If you wish to be protected relative to a prior fee, let me know the amount, and if the matter goes forward I will do my best to protect you." Plaintiff replied, "Thanks John. Mark and [I] had a 50/50 deal. Mark confirmed same in email to me." Approximately two months later, plaintiff forwarded his January 2014 e-mail exchange with Bank to Schaefer.

Holtzman initiated divorce proceedings in 2017. Duque retained defendant to represent her. After finalization of the divorce, plaintiff approached defendant and requested a 50% share in the fee defendant had earned in representing Duque. Plaintiff based his request on the November 2013 fee agreement and on the e-mails he had exchanged with Bank in 2014 and Schaefer in 2016. When defendant refused plaintiff's request, plaintiff filed a complaint alleging breach of contract, unjust enrichment, promissory estoppel, and the existence of a contract implied in fact.[2] Plaintiff claimed under each theory to be entitled to 50% of the fee defendant received for representing Duque in 2017.

In lieu of an answer, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10). Defendant contended that the 2013 agreement was for joint representation of Duque, and that Duque paid no fees under that agreement. Defendant further contended that Duque hired it to represent her in the 2017 divorce initiated by Holtzman, and that she did not consent to any fee sharing or referral fee arrangements arising out of this representation. Because Duque did not consent to fee sharing relative to the 2017 representation, defendant argued, the Michigan Rules of Professional Conduct (MRPC), specifically 1.5(e), prevented defendant from sharing any of the fees paid by Duque arising from defendant's representation of

---

[2] Plaintiff's appellate brief does not challenge the trial court's dismissal of his claims for unjust enrichment and promissory estoppel.

her in the divorce. On the same date that it filed its summary disposition motion, defendant filed a motion to stay discovery pending the trial court's summary disposition decision, arguing that no amount of discovery would allow plaintiff to succeed on his claims. The trial court granted the requested stay and, after hearing oral arguments, granted defendant's motion for summary disposition. This appeal followed.

## II. ANALYSIS

Plaintiff contends that the trial court erred by resolving factual issues in favor of defendant and prematurely granting summary disposition before the parties had conducted any discovery. We disagree.

## A. SUMMARY DISPOSITION

This Court reviews de novo a trial court's summary disposition ruling. *Walters v Nadell*, 481 Mich 377, 381; 751 NW2d 431 (2008). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). The moving party has the initial burden to support the claim with documentary evidence, but once the moving party has met this burden, the burden then shifts to the nonmoving party to establish that a genuine issue of material fact exists. *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005). This Court "reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (quotation marks and citation omitted). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. (quotation marks and citation omitted). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). Similarly, summary disposition under MCR 2.116(C)(10) "is generally premature if discovery has not been completed unless there is no fair likelihood that further discovery will yield support for the nonmoving party's position." See *Anzaldua v Neogen Corp*, 292 Mich App 626, 636; 808 NW2d 804 (2011) (quotation marks and citation omitted).

## B. BREACH OF CONTRACT

In support of its motion for summary disposition of plaintiff's claims, defendant presented the November 22, 2013 fee-agreement to establish that any fees owed plaintiff arose from Duque's retention of plaintiff and defendant to represent her. Defendant also presented Duque's affidavit, in which she averred that she and Holtzman reconciled after she retained plaintiff and defendant, and that she "no longer wished to have anything to do with [plaintiff]" after March 2014. Duque further attested that no one had informed her that plaintiff was entitled to any fees in connection with the 2017 representation, and that she had not consented, and did not consent, to plaintiff receiving any portion of the fees she paid to defendant in connection with her 2017 divorce.

Plaintiff does not argue that the parties' agreement to divide fees equally arises from the plain language of the November 2013 engagement letter. Rather, he contends that the 2013 fee-agreement encompassed defendant's 2017 representation of Duque, and that the January 2014 e-mail exchange between himself and Bank established that defendant agreed to a 50/50 split of the fees earned under the agreement, regardless of who did the work. He further contends that Schaefer essentially confirmed this agreement in his April 2016 e-mail exchange with plaintiff and by his failure to object at that time to the 50/50 agreement. We are unpersuaded.

The 2013 agreement establishes that Duque retained both plaintiff and defendant to represent her, and she agreed to compensate them based on the legal work they performed. Written when plaintiff was still representing Duque, Bank's January 2014 e-mail confirmed that, even though Schaefer was "handling [P]atty," plaintiff's firm and defendant would share the fees arising from Duque's case equally. However, approximately two months after Bank sent this e-mail, Duque indisputably discharged plaintiff, as was her right. See *Plunkett & Cooney, PC v Capitol Bancorp Ltd*, 212 Mich App 325, 331; 536 NW2d 886 (1995) ("[A] client has a right to discharge a lawyer at any time."). No formal discharge by Duque was required, and the fact that she retained defendant's firm and not plaintiff's firm to represent her in the 2017 divorce action is further evidence that the attorney-client relationship between Duque and plaintiff's firm had ended. See *Estate of Mitchell v Dougherty*, 249 Mich App 668, 684; 644 NW2d 391 (2002) (stating, "no formal discharge by the client is required, and the termination of an attorney-client relationship can be implied by the actions or inactions of the client."). Plaintiff's representation of Duque ended at that point, as did plaintiff's right to receive fees from Duque under the 2013 fee agreement.[3] See *Maddox v Burlingame*, 205 Mich App 446, 450; 517 NW2d 816 (1994) ("A lawyer discontinues serving a client when relieved of the obligation by the client . . . .").

Plaintiff does not dispute that Duque discharged his firm following the March 2014 elevator incident. Rather, he contends that Bank bound defendant to a 50/50 division of fees earned for representing Duque, and Schaefer tacitly agreed in his April 2016 e-mail that he "would do his best to protect [plaintiff's] right to his 50% share." Plaintiff further observes that Schaefer did not give any indication that he did not intend to abide by their prior agreement to split Duque's fees equally. However, plaintiff's argument fails to take into account the fact that Duque had discharged him two years earlier and misrepresents the plain meaning of Schaefer's e-mail. Contrary to plaintiff's representation, Schaefer did not agree to protect his "right to his 50% share" or to any share of future fees earned by defendant's representation of Duque. Schaefer's statement to plaintiff that he would try to protect him "relative to a prior fee" and his

---

[3] Plaintiff argues that the trial court made an impermissible factual finding when it found that the 2013 fee agreement was no longer in effect when Duque retained defendant in 2017. See *Patrick*, 322 Mich App at 605. We agree. However, given our de novo review and the fact that the trial court's factual finding is immaterial to our analysis, the court's error was harmless and does not require reversal of its summary disposition order. MCR 2.613(A). Even if the 2013 fee agreement governed defendant's 2017 representation of Duque, certainly those portions of the agreement arising from plaintiff's co-representation of Duque were nonoperational after Duque discharged plaintiff in 2014.

query as to the amount of the fee clearly indicates that Schaefer's focus was on the past, i.e., on the possibility of protecting fees owed to plaintiff for work performed before Duque had discharged him. Moreover, nothing in Schaefer's e-mail indicates that Schaefer contemplated splitting future fees with plaintiff should Duque decide to pursue a divorce from Holtzman.

Viewing the evidence in the light most favorable to plaintiff, we find no error in the trial court's conclusion that plaintiff did not meet his burden to establish a genuine issue of material fact with regard to his alleged entitlement to 50% of defendant's fees from its 2017 representation of Duque. The plain and ordinary language of the 2013 agreement does not establish an agreement between plaintiff and defendant to divide fees equally, and the e-mails, when viewed in context, do not raise a genuine issue of material fact that plaintiff was entitled to a share of the fees Duque paid defendant after she had discharged plaintiff. Accordingly, the trial court properly granted defendant summary disposition of plaintiff's claim for breach of the "50/50 Agreement."[4]

## C. REFERRAL FEE

Plaintiff argues in the alternative that even if he is not entitled to a 50% share of fees pursuant to the 2013 agreement, he is entitled at least to a reasonable referral fee. He acknowledges that he and defendant did not enter into a referral fee agreement, but contends that Duque's 2013 agreement that plaintiff would receive a share of the fees encompasses the payment of a referral fee. Plaintiff also suggests the existence of an implied-in-fact contract. Neither argument is persuasive.

MRPC 1.5(e) governs the division of fees between lawyers who are not part of the same firm and states:

(e) A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the client is advised of and does not object to the participation of all the lawyers involved; and

(2) the total fee is reasonable.

"[C]ontracts containing performance requirements that would violate the MRPC are not enforceable because such contracts contradict Michigan's public policy." *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 326 Mich App 684, 696; 930 NW2d 416 (2019), quoting

---

[4] Additionally, plaintiff presented no evidence that a "50/50 Agreement" of the type described in his complaint ever existed. In paragraph eight of his complaint, plaintiff defines the "50/50 Agreement" as defendant's agreement "to pay [plaintiff] 50% of the fees earned through the [2013] Fee Agreement and any subsequent agreement between [Duque] and [defendant]. Plaintiff provides no evidence that defendant ever agreed to pay him 50% of its earnings from "any subsequent agreements" with Duque.

*Morris & Doherty, PC v Lockwood*, 259 Mich App 38, 58; 672 NW2d 884 (2003). Under MRPC 1.5(e), a client need not affirmatively consent to an agreement by attorneys to share fees, such as a referral fee agreement. *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 326 Mich App 684, 697; 930 NW2d 416 (2019). Rather, MRPC 1.5(e) "unambiguously only requires that clients be advised and not object to the referral fee agreement." *Id.* While affirmative consent is not required, a client must object to a referral fee agreement at the time the client was informed of it for a referral fee paid to an attorney to violate MRPC 1.5(e). *Id*. at 704-705. If a client fails to object to a referral fee agreement at the time he or she is informed of it, the client's later objection to the referral fee agreement does not result in a violation of MRPC 1.5(e). *Id* at 704.

The essence of plaintiff's argument is that once a client agrees to any division of fees among retained attorneys, such agreement covers all divisions of fees, including payment of a referral fee to a later-discharged attorney, even where there is no evidence that the attorneys contemplated a referral fee or discussed it with the client. Clients do not have to agree affirmatively to referral fees, but they do have to be advised that a referral fee will be paid and not object to the referral fee agreement. MRPC 1.5(e)(1); *Sherbow*, 326 Mich App at 697. Clients cannot offer an objection to something about which they were never informed. It is unrefuted in the present case that neither plaintiff nor defendant advised Duque that defendant would pay plaintiff a referral fee.

Plaintiff contends that *Waddell v Tallman*, unpublished per curiam opinion of the Court of Appeals, issued December 20, 2016 (Docket No. 328926), supports his contention that he is entitled to a reasonable referral fee under his contract-implied-in-fact claim. A contract implied in fact arises "when services are performed by one who at the time expects compensation from another who expects at the time to pay therefor." *In re McKim Estate*, 238 Mich App 453, 458; 606 NW2d 30 (1999) (quotation marks and citation omitted). An implied-in-fact contract results "from the intention of the parties as expressed by their conduct and language." *In re Mazurkiewicz's Estate*, 328 Mich 120, 123; 43 NW2d 86 (1950). "Such a contract arises from the acceptance of beneficial services for which compensation would ordinarily have been paid." *Id*.

In a split decision, the *Waddell* majority held that, assuming the plaintiff could establish the existence of a referral-fee contract implied in fact at trial, the trier of fact could determine a reasonable amount of the referral fee based on the totality of the circumstances. *Id*. at 5. We first note that *Waddell* is an unpublished opinion, and thus, it is not binding precedent, MCR 7.215(C)(1), although it may be considered instructive or persuasive, *Paris Meadows LLC v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010). In any event, central to the majority's holding was the fact that the plaintiff had presented evidence sufficient to survive summary disposition from which a jury might reasonably find the existence of a contract implied in fact. *Id*. at 4. The plaintiff submitted evidence indicating that he had referred the client to the defendant, that the client did not object to the parties splitting a fee, that the defendant was agreeable to paying a referral fee, and that the parties agreed to wait until the conclusion of the legal matter to decide on the amount of the referral fee. *Id*. at 2.

Plaintiff's reliance on *Waddell* is misplaced.[5] It is undisputed that the present plaintiff introduced Duque to Bank, Schaefer, and the defendant law firm. However, unlike the plaintiff in *Waddell*, the present plaintiff has presented no evidence of any intent on his part to seek a referral fee prior to filing the underlying claim or of defendant's intent to pay him a referral fee. In other words, plaintiff did not meet his burden to present evidence establishing a genuine issue of material fact that the parties' conduct or language gave rise to a contract implied in fact for a referral fee. See *In re Mazurkiewicz's Estate*, 328 Mich at 123; *AFSCME*, 267 Mich App at 261. Certainly, defendant benefitted from the introduction to Duque. However, plaintiff's recompense for the introduction was the opportunity to serve as co-counsel and to earn fees through the performance of legal work. Nothing in the evidence presented to the trial court suggests that plaintiff or defendant also considered a referral fee. Accordingly, the trial court did not err in granting defendant summary disposition of plaintiff's implied-in-fact contract claim.[6] See *Patrick*, 322 Mich App at 605.

In sum, plaintiff acknowledges that the parties do not have a referral-fee agreement, plaintiff presented no evidence that defendant generally paid him referral fees in the past, nothing in the 2013 agreement refers to a referral fee, and Duque stated in her affidavit that no one informed her that plaintiff was entitled to a referral fee for the 2017 representation. Viewed in the light most favorable to plaintiff, this evidence does not establish a question of fact that plaintiff is entitled to payment of a reasonable referral fee.

Plaintiff next argues that the trial court erred by granting summary disposition to defendant before discovery had completed. Generally, a trial court should not grant a motion for summary disposition under MCR 2.116(C)(10) until discovery is complete. See *Kern v Kern-Koskela*, 320 Mich App 212, 227; 905 NW2d 453 (2017). However, if there is no fair likelihood that further discovery will uncover factual support for a party's position, a trial court may grant summary disposition under MCR 2.116(C)(10) before discovery is complete. *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 723-724; 909 NW2d 890 (2017). A party claiming that summary disposition under MCR 2.116(C)(10) is premature must identify and support a disputed issue with independent evidence. *Id*. at 724.

No amount of discovery would contradict the evidence establishing that the attorney-client relationships between plaintiff and Duque and defendant and Duque gave rise to the 2013 fee-agreement, that the agreement contemplated attorney fees based on plaintiff's and

---

[5] Plaintiff also relies on *Ravitz v Rundell*, unpublished per curiam opinion of the Court of Appeals, issued November 16, 2008 (Docket No. 279650), in which we held that once a client agrees to the payment of a referral fee, the client's later objection to payment of the fee has no affect. Given the lack of evidence that Duque ever agreed to payment of a referral fee, the inapplicability of *Ravitz* is obvious.

[6] To the extent plaintiff might argue that an agreement to split their attorney fees 50/50 amounted to the build-in of a referral fee to plaintiff, it is undisputed that Duque was not advised of such arrangement, and thus, plaintiff could not overcome the violation of MRPC 1.5(e)(1). See also *Law Offices of Jeffrey Sherbow, PC*, 326 Mich App at 697.

defendant's legal work performed in her case, and that Duque terminated her attorney-client relationship with plaintiff in early 2014. In addition, it is undisputed that plaintiff and defendant did not have a referral fee agreement, and plaintiff has presented no evidence that would have allowed the trial court to find a question of fact regarding whether there existed a referral fee contract implied in fact. Plaintiff identifies several questions to which he would like the answer, but none of them would challenge the foregoing. Thus, plaintiff's argument that further discovery would support his claims amounts to pure conjecture, and "[a]llowing discovery on the basis of conjecture would amount to allowing an impermissible fishing expedition." *Augustine v Allstate Ins Co*, 292 Mich App 408, 420; 807 NW2d 77 (2011) (quotation marks and citation omitted).

As the prevailing party, defendant may tax costs pursuant to MCR 7.219.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Anica Letica