*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LIVINGSTON COUNTY HOCKEY
ASSOCIATION, INC.,

       Petitioner-Appellant,

v

TOWNSHIP OF GENOA,

       Respondent-Appellee.

UNPUBLISHED
May 6, 2021

No. 352715
Tax Tribunal
LC No. 18-000021-TT

Before: BORRELLO, P.J., and BECKERING and SWARTZLE, JJ.

PER CURIAM.

Petitioner, Livingston County Hockey Association, Inc., appeals by right from a decision of the Michigan Tax Tribunal (MTT) denying its petition for an exemption from ad valorem property taxes under MCL 211.7o(1)(charitable institutions). The crux of petitioner's claim is that it is organized for a charitable purpose; hockey and ice skating are charitable activities because they "lessen the burdens of government" by improving the health and wellness of the population petitioner serves, and petitioner provides significant charity to that end. The MTT concluded that petitioner's overall nature was recreational, not charitable, and it deemed petitioner ineligible for the charitable institution tax exemption. We affirm.

## I. PERTINENT FACTS

Petitioner is a Michigan nonprofit corporation with Internal Revenue Code (IRC) 501(c)(3)[1] status. The subject property is the Grand Oaks Ice Arena, located at 970 Grand Oaks Drive in respondent, Genoa Township. The arena contains a rink with one sheet of ice and "related ancillary space," and is used for "figure skating, ice hockey, open skate, youth and adult learn-to-skate programs, and other ice skating related programs."

---

[1] 26 USCA 501(c)(3)

-1-

Petitioner sent a letter dated December 11, 2017, to respondent's December board of review, informing the board that petitioner was a nonprofit charitable institution entitled to an exemption from property taxes under MCL 211.7o(1), and asking the board to correct the taxable status of the subject parcel for tax years 2016 and 2017. When the board did not act on petitioner's request, petitioner filed two petitions in the MTT seeking exemptions: one for tax years 2016 and 2017, and the other for tax year 2018. After the MTT consolidated the two appeals, petitioner filed an amended petition, and respondent filed an amended answer. Petitioner later filed a successful motion to amend its first amended petition to include tax year 2019.

The parties submitted a joint statement of facts on June 14, 2019, and subsequently filed cross-motions for summary disposition. Respondent argued that petitioner was not a charitable institution for purposes of MCL 211.7o(1) because it failed four of the six factors the Michigan Supreme Court identified in *Wexford Med Group v City of Cadillac*, 474 Mich 192; 713 NW2d 734 (2006), for use in determining whether an entity is a "charitable institution" for purposes of MCL 211.7o(1). Petitioner argued that it is entitled to the exemption because it satisfies the statutory criteria as interpreted by Michigan's appellate courts. Each party filed responses in opposition to the other party's motion for summary disposition. In addition, the Michigan Townships Association and Michigan Municipal League filed a joint brief as amici curiae in support of respondent.

Applying the *Wexford* factors, the MTT determined that petitioner was not a charitable institution during the tax years at issue. Based on this determination, the MTT concluded that petitioner "did not occupy the property for charitable objectives" as required by MCL 211.7o(1), and thus, was not entitled to the charitable institution exemption.

## II. DISCUSSION

Petitioner contends that the MTT erred by denying its claim to exempt its ice rink from ad valorem property taxes under MCL 211.7o. We disagree.

## A. STANDARDS OF REVIEW

Where fraud is not claimed, appellate review of the MTT's decision is for "misapplication of the law or adoption of a wrong principle." See *Wexford Med Group*, 474 Mich at 201. This Court deems "the tribunal's factual findings conclusive if they are supported by 'competent, material, and substantial evidence on the whole record.' " *Id*. "Evidence is competent, material, and substantial if a reasoning mind would accept it as sufficient to support a conclusion." *Galuszka v State Employees Ret Sys*, 265 Mich App 34, 45; 693 NW2d 403 (2004). When statutory interpretation is involved, this Court reviews de novo the tribunal's decision. *Wexford*, 474 Mich at 202. "[T]he construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons." *Superior Hotels, LLC v Mackinaw Twp,* 282 Mich App 621, 629; 765 NW2d 31 (2009) (quotation marks and citation omitted). Tax exemptions must be narrowly construed because they upset the desirable balance achieved by equal taxation. *Wexford*, 474 Mich at 204. This Court also reviews de novo the grant or denial of summary disposition. See *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 75; 780 NW2d 753 (2010). In an appeal from an order of the Tax

Tribunal, the appellant bears the burden of proof. *ANR Pipeline Co v Dep't of Treasury*, 266 Mich App 190, 198; 699 NW2d 707 (2005).

## B. NONPROFIT CHARITABLE INSTITUTION EXEMPTION

The General Property Tax Act (GPTA) provides an exemption for "[r]eal or personal property owned and occupied by a nonprofit charitable institution while occupied by that nonprofit charitable institution solely for the purposes for which that nonprofit charitable institution was incorporated . . . ." MCL 211.7o(1). To be entitled to the exemption, taxpayers must meet three criteria:

(1) The real estate must be owned and occupied by the exemption claimant;

(2) the exemption claimant must be a nonprofit charitable institution; and

(3) the exemption exists only when the buildings and other property thereon are occupied by the claimant solely for the purposes for which it was incorporated. [*Wexford*, 474 Mich at 203.]

There is no dispute that petitioner owns and occupies the subject property and is a nonprofit institution. At issue is whether petitioner is a "nonprofit *charitable* institution."

The question of whether an organization is a charitable institution pertains less to whether an institution offers charity or performs charitable work than to whether the overall nature of the organization is charitable. *Id*. at 212-13.

[Charity] * * * [is] a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. [*Id*. at 214 (quotation marks and citation omitted).]

In *Wexford*, the Michigan Supreme Court set forth the following six factors to consider when determining if an entity is a "charitable institution" for purposes of MCL 211.7o(1):

(1) A "charitable institution" must be a nonprofit institution.

(2) A "charitable institution" is one that is organized chiefly, if not solely, for charity.

(3) A "charitable institution" does not offer its charity on a discriminatory basis by choosing who, among the group it purports to serve, deserves the services. Rather, a "charitable institution" serves any person who needs the particular type of charity being offered.

(4) A "charitable institution" brings people's minds or hearts under the influence of education or religion; relieves people's bodies from disease, suffering, or

-3-

constraint; assists people to establish themselves for life; erects or maintains public buildings or works; or otherwise lessens the burdens of government.

(5) A "charitable institution" can charge for its services as long as the charges are not more than what is needed for its successful maintenance.

(6) A "charitable institution" need not meet any monetary threshold of charity to merit the charitable institution exemption; rather, if the overall nature of the institution is charitable, it is a "charitable institution" regardless of how much money it devotes to charitable activities in a particular year. [*Id*. at 215.]

Analyzing each of these factors in turn, the MTT found that the parties did not dispute the first factor, that the third factor was indeterminable because petitioner lacked a written policy addressing how it provided charity, and that the fifth factor did not weigh against petitioner. However, the MTT found that the second, fourth, and sixth *Wexford* factors weighed against finding that petitioner was a charitable institution. Further, because petitioner was not a charitable institution, it did not occupy the subject solely for charitable purposes and, therefore, was not entitled to a tax exemption. The record supports the MTT's conclusions regarding the second, fourth, and sixth *Wexford* factors.

As to the second *Wexford* factor, the MTT concluded that petitioner is not organized "chiefly, if not solely, for charity." Petitioner's articles of incorporation (AOI) provide that petitioner is organized for the following purposes:

(1) To establish and operate amateur ice hockey teams and to provide recreation activity for the youth of the Livingston County Hockey Association.

(2) To encourage, promote and improve the game and standards of ice hockey, to build character, and foster sportsmanship among youth.

(3) To become a member of, associate or corporate with any organization, association or league with objects altogether or in part similar to those of this association.

(4) Conduct Ice Hockey Tournaments and select representative teams for Tournaments.

(5) To operate and act exclusively for charitable purposes.

(6) To receive and administer assets exclusively for charitable purposes, no part of the earnings of which shall inure to the benefit of any of the Corporation's members, directors, officers, or other private persons, no substantial part of the activities of which shall be to carry on propaganda or otherwise attempt to influence legislation, and the Corporation shall not participate in or intervene in (including publishing or distribution of statements) any political campaign on behalf of any candidate for public office.

-4-

(7) To conduct such activities and exercise such powers as are necessary to the achievement of the foregoing in and furtherance of the purposes of the Corporation, including, without limitation, the employment of individuals, consultants and others.

According to its bylaws (BL), petitioner's purposes are the following:

[a] To develop and encourage sportsmanship between all players for the betterment of their physical and social well-being.

[b] To encourage and improve the standard of ice hockey and other ice activities in the greater Livingston County Area.

[c] To associate with the MAHA, USA hockey and other hockey associations.

[d] To operate and act exclusively for non profit [sic] purposes.

[e] To receive and administer assets exclusively for non profit [sic] purposes.

[f] To operate the Grand Oaks Arena for the purpose of promoting ice hockey and ice related activities.

[g] To do any and all acts desirable in the furtherance of the foregoing purposes.

[h] The corporation shall not carry on any activity not permitted to be carried on by non profit [sic] corporations under the statutes of the State of Michigan, the Articles of Incorporation and these By-laws.

Read in their entirety, petitioner's AOI and BL do not give the impression that petitioner is organized "chiefly, if not solely, for charity." *Wexford*, 474 Mich at 215. Paragraphs (1), (2), (3), and (4) of the AOI, and (b), (c), (f), and (g) of the BL, support the MTT's conclusion that petitioner is organized chiefly for promoting ice hockey and ice-related activities. Nothing in either document indicates what "gift" petitioner is providing to whom or for what purpose. In addition, petitioner has provided no evidence of any policy, written or otherwise, that directly addresses or provides any insight into its alleged charitable purposes. See, e.g., *Wexford*, 474 Mich at 216 (noting that the petitioner had a "charity care program that offers free and reduced-cost medical care to the indigent with no restrictions").

In analyzing the second *Wexford* factor, the MTT found persuasive this Court's reasoning in *Boyne Area Gymnastics v City of Boyne City*, unpublished per curiam opinion of the Court of Appeals, issued May 15, 2012 (Docket No. 303590).[2] Although the *Boyne* petitioner's AOI mentioned that it was "organized exclusively for charitable, religious, educational, and scientific

---

[2] Although unpublished opinions are not binding precedent, this Court may consider them as instructive or persuasive. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

purposes," this Court concluded that the articles "generally state that petitioner was organized to teach gymnastics, dance, and physical fitness," and that "the waiving of fees to some members of the public is incidental to the primary purposes for organizing." *Boyne*, unpub op at 6. The MTT reasoned that, similar to *Boyne*, "although Petitioner's Articles also state that it was organized for charitable purposes, the Articles generally state that Petitioner was organized to promote ice hockey and ice related activities."

The MTT's reliance on *Boyne* for analysis of the second *Wexford* factor was not misplaced. In the case at bar, petitioner's AOI make passing references to "charitable purposes," but the articles and bylaws as a whole show that petitioner was organized to promote hockey and ice-related activities. Petitioner identifies discounted and free ice time as the charity that it provides to certain local clubs and groups and for specific ice-related community events. However, nothing in the record indicates that petitioner was doing anything other than offering charity to achieve its recreational purposes. Providing charity is not dispositive of an organization's status as a charitable institution. See *Wexford*, 474 Mich at 212-213.

To warrant an exemption under MCL 211.7o(1), "[i]t is not enough . . . that one of the direct or indirect purposes or results is benevolence, charity, education, or the promotion of science. [The petitioner] must be organized chiefly, if not solely, for one or more of these objects." *Wexford*, 474 Mich at 205. The MTT's conclusion that petitioner is not "chiefly or solely organized for charity," but for the promotion of ice hockey and ice-related activities, finds ample support in petitioner's AOI and BL and this Court's persuasive reasoning in *Boyne*. Beyond conclusory statements, petitioner has presented no evidence that it is organized "chiefly, if not solely, for charity."

The crux of petitioner's argument is that it fulfills the fourth *Wexford* factor. Petitioner maintains that it is similarly situated to the taxpayer in *Chelsea Health and Wellness Found v Twp of Scio*, unpublished per curiam opinion of the Court of Appeals, issued October 12, 2017 (Docket No. 332483), and, therefore, equally entitled to exemption under MCL 211.7o(1). As did the MTT, we reject this comparison. The facts of *Chelsea* are significantly distinguishable from those of the present case, and the distinctions are dispositive.

The taxpayer in *Chelsea*, Chelsea Health and Wellness Foundation (the Foundation), was formed as a condition of the merger of Chelsea Community Hospital and Saint Joseph Mercy Hospital System. *Chelsea*, unpub op at 2. It was "established as a nonprofit corporation and funded with $25 million to be used 'in promoting health, wellness and fitness education, health care initiatives and other community-based activities' " in five designated service areas, one of which was the city of Dexter. *Id*. The Foundation's mission is " '[t]o create a culture of wellness and foster sustained improvements in the health of our communities through stewardship of our resources, innovative and collaborative grants, and engagement of our residents in the pursuit of healthy life choices.' " *Id*. To further that mission, the Foundation "focuses on four 'elements': (1) eating better; (2) moving more; (3) avoiding unhealthy substances; and (4) connecting with others in healthy ways." *Id*.

The property for which the Foundation sought a tax exemption under MCL 211.7o(1) was the location of the Foundation's Dexter Wellness Center (DWC). *Id*. The DWC is a two-story building that "includes amenities commonly found in full-service fitness facilities," as well as "a

conference room on the first floor that is made available for community group meetings and various educational seminars sponsored by the Foundation." *Id*. In *Chelsea*, we explained the Foundation's "two-part strategy" for achieving its mission as follows:

> The Foundation encouraged each of the five communities in its service area to establish wellness coalitions, comprised of community stakeholders who were familiar with the health needs. These wellness plans are presented to the Foundation and, assuming the proposed interventions meet the Foundation's mission, the Foundation provides funds and other support to implement the interventions. . . .
>
> The Foundation's second key strategy involves operation of wellness centers in Dexter, Chelsea, Manchester, and Stockbridge. In addition to the exercise amenities available at the centers, the Foundation provides various educational programming focused on nutrition, physical activity, and other health and wellness topics. The educational programming is available to nonmembers, though some of the presentations have an associated fee. The Foundation also offers a program referred to as "Next Steps" at the DWC and Chelsea Wellness Center (CWC). With a healthcare provider referral, participants can enroll in a program designed to combat a specific health challenge, such as cardiac fitness or weight management. Each eight-week program includes assessments at the beginning and end of the program, an individualized exercise plan, two 60-minute group workout sessions per week in a supervised setting, a summary report provided to the participant's referring healthcare provider, unlimited access to the fitness facility for the duration of the program, and an option to transition to full membership at a discounted fee. Though it costs the Foundation approximately $220 to facilitate an individualized program for each Next Steps participant, enrollment costs only $99.
>
> An individual membership at the DWC costs $69 per month, but when various discounts are taken into account, the Foundation collected an average of $57 per billable member during the tax years at issue. The Foundation also provides two "scholarship" options for DWC membership. To be eligible for a scholarship, the recipient must demonstrate financial need by showing that his or her income is at or below 200% of the federal poverty level The first scholarship option allows the recipient to enroll in the Next Steps program free of charge and receive an additional month of free membership at the conclusion of the program. The second scholarship option allows the recipient to receive two months of free general membership. After the free membership period has elapsed under either option, the scholarship recipient can continue his or her membership at a reduced 50% rate. Scholarships are available for an unlimited duration, subject to review for continuing financial need and the requirement that the recipient uses the facility at least twice a week. According to [the Foundation's chief executive officer], the eligibility standards are flexible and exceptions are generously available for extenuating circumstances. The Foundation began to prominently advertise the scholarship opportunities on the DWC's website in 2014, but did not have anyone apply for a scholarship in 2013 or 2014. The same scholarship opportunities are

available at the Foundation's Chelsea location and an average of 33 scholarships are awarded at the CWC each year.  [*Id*. at 3-4.]

This Court concluded with respect to the fourth *Wexford* factor that the Foundation's program, including its use of the DWC, lessened the burdens of government to promote and improve public health.  *Id*. at 11-12.  Petitioner reads the Court's holding as establishing that "sponsored activities for fitness and physical exercise by a nonprofit taxpayer lessen the burdens of government and, therefore, are entitled to exemption under MCL 211.7o(1)."  However, this is an oversimplification attributable to petitioner's focus on the fact that the DWC offered all the amenities of a full-service fitness center and its ignoring the role the center had in the Foundation's overall charitable program.  See *Wexford*, 474 Mich at 212-213 (noting, "it is improper to focus on one particular facet or activity. . . . it is the overall nature of the institution, as opposed to its specific activities, that should be evaluated").  The activities at the DWC were not merely "sponsored activities for fitness and physical exercise by a nonprofit taxpayer."  They were an integrated part of a charitable program expressly designed to promote and improve public health.  In other words, the Foundation did not simply provide charity or do charitable work; it was charitable by nature.  See *id*. at 212-213.

Petitioner contends that it is "promoting the exact same types of wellness and health objectives" that the DWC promotes and that, like the Foundation's operation of the DWC, its operation of the ice arena lessens the obligation of the government to promote the public health.  See *Chelsea*, unpub op at 11-12, citing Const 1963, art. 4, § 51,[3] and MCL 333.2221.[4]  Yet, nothing in the record supports petitioner's claim that its purpose is to promote "wellness and health objectives."  As already indicated, petitioner's organizational documents show that its purpose is chiefly recreational, i.e., the promotion of ice hockey and ice-related activities.  Any improvements in health or fitness arguably are incidental to these objectives.

Moreover, merely quoting the constitutional and statutory provisions this Court linked to the Foundation's activities is not evidence that petitioner is contributing to them in the same way as the Foundation.  It is not the Foundation's operation of a fitness center that entitled it to a tax exemption.  Rather, it is the overall nature of the Foundation as a charitable institution and the

---

[3] "The public health and general welfare of the people of the state are hereby declared to be matters of primary public concern. The legislature shall pass suitable laws for the protection and promotion of public health."

[4] The Department of Community Health must

> continually and diligently endeavor to prevent disease, prolong life, and promote the public health through organized programs, including prevention and control of environmental health hazards; prevention and control of diseases; prevention and control of health problems of particularly vulnerable population groups; development of health care facilities and agencies and health services delivery systems; and regulation of health care facilities and agencies and health services delivery systems to the extent provided by law.

center's role in achieving the Foundation's charitable mission. Nothing in petitioner's operational documents or its activities suggests that its ice arena serves a purpose comparable to that of the DWC in the Foundation's program. In addition, providing discounted or free ice time so users can develop the skills necessary to play amateur hockey seems to require a level of physical fitness and athletic ability that exceeds what, in Michigan's view, is strictly necessary to improve "public health."[5] In other words, although petitioner provides evidence of the government's obligation to promote the public health, it has presented no evidence of the government's obligation to create amateur athletes. The fact that petitioner may provide charity in the form of discounted or free ice time does not make it a charitable institution. See *Wexford*, 474 Mich at 212-213.

Petitioner asserts, the "MTT Order argues that the taxpayer in *Chelsea* was entitled to exemption because it was a larger organization with more resources that helped more people, whereas [petitioner] is just a small community ice rink whose contributions to the public welfare the MTT Order deems to be insignificant and trivial." This is not accurate. The MTT recognized that petitioner provided some charity, and that it did not need to provide charity on the scale of the Foundation to be a charitable institution. Ultimately, however, the MTT rested its decision on the lack of record evidence that the charity petitioner provides—discounted or free ice time—was " 'designed to improve the health of the population.' "

The record supports the MTT's conclusion. An organization does not have to provide charity to "every single person regardless of the type of charity offered or the type of charity sought." *Wexford*, 474 Mich at 213. Even assuming that the MTT's reference to "the population" refers only to petitioner's members,[6] petitioner has not met its burden to establish that its charity was designed to improve its member's health. Instead, the record suggests that any improvement in its members' health was incidental to petitioner's goal of promoting ice hockey and ice-related events. See *ProMed Healthcare v City of Kalamazoo*, 249 Mich App 490, 500; 644 NW2d 47, 53 (2002) (affirming the MTT's denial of a "public health" and "charitable institution" exemptions in part because the petitioner "failed to present evidence that its provision of charitable medical care constituted anything more than an incidental part of its operations"); see also *Boyne*, unpub op at 7 (indicating that "petitioner's charitable endeavors, while laudable, appear to be incidental to its recreational purposes, so that petitioner's overall nature is not charitable").[7]

---

[5] The document referenced by petitioner on page 11 of its brief to this Court, *Our Health Begins with: The Michigan Health and Wellness 4x 4 Plan*, recommends that adults get 150 minutes per week of moderate intensity exercise, such as brisk walking, biking, or swimming. This seems to be a level of fitness already achieved by those eligible to play amateur hockey and compete in petitioner's annual hockey tournament.

[6] Article II, ¶ 1 of the AOI expressly identifies petitioner's members as the beneficiaries of petitioner's activity.

[7] Petitioner argues that the MTT's reliance on *Boyne* is misplaced because the *Boyne* petitioner "did not provide any evidence that it lessened the burdens of government" whereas here, "the record evidence makes clear that the overall nature of [petitioner's] activities is to lessen the burden on government by promoting fitness and wellness . . . ." This claim of error also lacks merit. The

In sum, petitioner's argument that it meets the requirement of the fourth *Wexford* is unavailing. The factual differences between *Chelsea* and the case at bar are significant, and those differences are dispositive. Unlike the Foundation, petitioner has presented no evidence linking the charity it provides to any burden the government is legally obligated to undertake. Apart from *Chelsea*, petitioner has offered no authority in support of its position that operation of its ice arena lessens the burdens of government.

As to the sixth *Wexford* factor, the MTT found that, despite the discounted and free ice time petitioner afforded several ice hockey groups, its overall nature was not charitable. The discounts were not given to promote public health, but to further the goals of promoting ice hockey and ice-related activities. The record supports this conclusion. Petitioner is not organized chiefly for charity, nor are its activities chiefly charitable. Petitioner's organization and activities are inconsistent with those of organizations Michigan appellate courts have deemed entitled to tax exemption as charitable institutions. See, e.g., *Wexford*, 474 Mich at 216; *Gundry v RB Smith Mem Hosp Ass'n*, 293 Mich 36, 38; 291 NW 213 (1940) (affirming a tax exemption where the hospital charges for all patients, charges county patients and children at less than cost, does not collect from the indigent, and has never turned away anyone who could not pay); *Chelsea*, unpub op at 2-12.

In sum, to be entitled to an exemption under MCL 211.7o(1), a taxpayer must establish that it is a nonprofit charitable institution. *Wexford*, 474 Mich at 205. The record amply supports the MTT's factual findings regarding the disputed *Wexford* factors. Petitioner is not organized "chiefly, if not solely, for charity," it has not established that discounted and free ice time lessen the burdens of government, or that its overall nature is charitable. The record supports the MTT's conclusion that petitioner is organized for the promotion of hockey and ice-related activities, that any health and wellness benefits that accrue to its members are incidental to petitioner's purpose to promote hockey and ice-related activities, and that petitioner's overall nature is recreational. Accordingly, although nonprofit, petitioner is not a nonprofit *charitable* institution for purposes of MCL 211.7o(1). Because the MTT's findings are supported by competent, material, and substantial evidence on the whole record, and it has not misapplied the law or adopted a wrong principle, *Wexford*, 474 Mich at 201, we affirm the MTT's denial of petitioner's request for a tax exemption under MCL 211.7o(1). In light of our disposition of this issue, and considering that petitioner identifies no disputed issues of genuine fact requiring remand for a trial, we need not address petitioner's remaining issues.

Affirmed.

/s/ Stephen L. Borrello
/s/ Jane M. Beckering

---

MTT's opinion shows that it relied on *Boyne* not for its determination under *Wexford* factor 4 that hockey and ice-related activities were not charitable activities, but for purposes of determining under factor 2 that petitioner was not organized chiefly for charity. As discussed above, the record supported the MTT's conclusion as to *Wexford* factor 2.